OPINION OF THE COURT
Melvin L. Olver, J.
On April 14, 1995, the defendant, Todd P. Johnson, was stopped and arrested on Scottsville Road (Route 383) in the Town of Chili, Monroe County, New York, for two traffic infractions, failure to maintain lane and speeding, in violation *905 of section 1128 (a) and section 1180 (d) of the Vehicle and Traffic Law, by Monroe County Sheriff’s Deputy Lance Hine. The defendant was also arrested for two counts of driving while intoxicated, under section 1192 (2) and (3) of the Vehicle and Traffic Law. Defendant was given an appearance ticket at the scene, returnable April 27, 1995, in Chili Town Court.
Pursuant to the provisions of Vehicle and Traffic Law § 1193 (2) (e) (7) (a), which became effective November 1, 1994: "A court shall suspend a driver’s license, pending prosecution, of any person charged with a violation of subdivision two or three of section eleven hundred ninety-two of this article who, at the time of arrest, is alleged to have had .10 of one percent or more by weight of alcohol in such driver’s blood as shown by chemical analysis of blood, breath, urine or saliva, made pursuant to subdivision two or three of section eleven hundred ninety-four of this article.”
Other paragraphs of this subdivision set forth procedures as to the time period within which such suspension is to occur; the required findings of the court on which the suspension is to be based; the entitlement of a defendant to "make a statement” and "present evidence tending to rebut the court’s findings”; the eligibility of a defendant to be considered for a conditional license after a suspension has been in effect for 30 days; and the authority of a court to grant a "hardship privilege” license under specified and limited circumstances.
At the time of initial appearance before the court, defendant’s counsel orally raised objections to the foregoing statute, and the suspension process, on the grounds that it was unconstitutional. Completion of the arraignment was adjourned to permit the motion to be made on papers and so that required notice of the constitutional challenge could be given to the New York State Attorney-General, as well as to the Monroe County District Attorney. No responding papers have been received from either the Attorney-General or the Monroe County District Attorney.
Defendant’s moving papers challenge the constitutionality of Vehicle and Traffic Law § 1193 (2) (e) (7), primarily on due process grounds, under both the New York State and Federal Constitutions, articulated as follows:
"(a) The statute violates the Due Process Clause in that it fails to provide any notice that the suspension will be sought.
"(b) The statute violates Due Process Principles in that it does not provide for a hearing.
*906 "(c) The statute violates the Due Process Clause of the New York and United States Constitutions in that it sets no limit on the period of suspension.
"(d) The statute violates the Equal Protection Clause of the New York and United States Constitutions in that it sets no limit on the Period of Suspension.
"(e) The statute imposes a sanction for conduct which is not presently criminal without requiring that occurrence of the conduct be proven beyond a reasonable doubt.
"(f) The statute is Unconstitutionally Vague — Test to be considered.
"(g) The Statute Imposes a Penalty Without a Finding of Reasonable Doubt.
"(h) The Statute is Facially Unconstitutional since it Denies the Motorist the Constitutionally Guaranteed Right to Call Witnesses and Impermissively Shifts the Burden of Proof.
"(i) Numerous Courts statewide have agreed with the Defendant’s position.”[1]
At the outset of this discussion, this court recognizes the tremendous costs, both financially and in the effect on human lives, which are imposed on society by intoxicated drivers. The tragic impact of alcohol-related accidents is felt in the loss of lives, dehabilitating injuries, property damage and increased insurance premiums, tearing the fabric of family relationships and even intruding into the workplace. Few, if any, would argue with a public policy of preventing intoxicated persons from operating vehicles on our State highways.[2]
However, no matter how admirable the objectives may be, when recognized individual rights are involved, and conduct is penalized or otherwise sanctioned, procedures must comply with constitutional and legal principles, particularly the right to due process. As the United States Supreme Court made clear in Mathews v Eldridge (424 US 319), the "specific *907 dictates of due process” involve a balancing approach which considers the private interests of the person affected by the official action and the government’s interest (public policy), together with an analysis of the risk of an erroneous deprivation of the private interests through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards. (Supra, at 335.)
Determination of the "specific dictates of due process” required in particular circumstances also is dependent upon the punitive nature of the sanctions imposed. In Kennedy v Mendoza-Martinez (372 US 144), the Supreme Court of the United States addressed the cases of two native-born citizens whose citizenship was terminated during World War II for allegedly remaining outside of the jurisdiction of the United States for the purpose of evading the draft, without any administrative or judicial proceedings whatsoever. The Court’s decision set forth a seven-point analysis to be applied in determining whether a statute is penal or regulatory in character. (Supra, at 168.) Determining that the sanctions imposed in that case (loss of citizenship) were punitive in nature, the Court concluded that such punishment could not be imposed " 'without due process of law.’ ” (Supra, at 186.)
In the present case, Vehicle and Traffic Law § 1193 (2) (e) (7) imposes the sanction of license suspension at the outset of the criminal proceeding, in addition to any sanction which can be imposed following conviction or a plea of guilty. The nature of that sanction must be examined in determining the due process to which the defendant motorist is entitled. Although there appear to be no reported cases presently on the subject, there is a growing body of unreported cases which have been made available to the court. Two of these, People v Micich (Just Ct, Town of Queensbury [Warren County], Jan. 27, 1995) and People v Hamilton/Baptista (Oswego City Ct [Oswego County], Apr. 4, 1995), undertake a careful analysis of the statute, and of the suspension-pending-prosecution sanction, pursuant to the factors articulated in Kennedy (supra). This court concurs with the results of that analysis, concluding that the suspension sanction here is punitive in nature. In addition, this court notes that the Governor’s approval message, at the time that he signed this law, clearly emphasized the "punitive” nature of the suspension. The message stated: "Prompt suspension not only serves a general deterrent by mandating swift and certain penalties, but also keeps the potentially and dangerous driver off the road during adjudica *908 tian of the criminal charge.”[3] (1994 McKinney’s Sessions Laws of NY, at 2972.)
It is clear from the foregoing that the suspension pending prosecution is, in fact, a penalty, applied and imposed totally within the context of a criminal proceeding.[4]
This court is mindful of the fact that criminal courts are required to suspend the license of a defendant as part of the arraignment process in two other instances under the Vehicle and Traffic Law — where there has been a refusal to submit to a chemical test (Vehicle and Traffic Law § 1194 [2]), and where the defendant has been charged with the violation of section 1192 (2), (3) or (4) and either is charged with a felony under article 120 or 125 of Penal Law or had a prior Vehicle and Traffic Law § 1192 conviction within the preceding five years (Vehicle and Traffic Law § 1193 [2] [e] [1]). The suspension process here being challenged applies, in essence, at the time of arraignment on any other driving-while-intoxicated charge under Vehicle and Traffic Law § 1192 (2) or (3), where there has been a test for blood-alcohol content with a result of .10% or more. Most such arrests are "first time” offenders. In the case of refusal suspensions, the court’s involvement is minimal, since the suspension is followed almost immediately (within 15 days) by an administrative hearing, which proceeds separately. Furthermore, that suspension, initiating the separate administrative proceeding, is based upon a sworn written report separate from the accusatory instruments filed in the criminal proceeding. Any further sanctions imposed in the administrative proceeding relate to the refusal to submit to a chemical test, conduct which is not at issue in the criminal *909 prosecution. This process was found to pass constitutional muster in Matter of Ventura (108 Misc 2d 281 [Sup Ct, Monroe County 1981]).
Upon initial review, the statute under attack in this case is similar to the "suspension-pending-prosecution” provisions (or "second-offense” suspensions) under Vehicle and Traffic Law § 1193 (2) (e) (1), which have been in effect for some time. In fact, there is some indication that there was a deliberate attempt to pattern the new provisions after the existing ones. It should be noted, however, that there appear to be no judicial decisions addressing the constitutionality of the "second offense” suspension procedure. Moreover, there are significant differences between the two processes.
A prior alcohol-related conviction, or a related Penal Law felony, could be viewed as legitimately increasing the level of the government’s concern, causing a shift in the nature of due process required under the Mathews v Eldridge (supra) three-prong test. Furthermore, involvement of a motorist in a prior alcohol-related criminal proceeding makes it probable that they received "notice” of a possible suspension, in the event of a subsequent arrest, either from an attorney who may have represented them, by the court in which the conviction was had (by reason of warnings given at the time of sentencing or plea colloquy, as is the practice of this court), or through postsentencing proceedings, such as the Drinking and Driver Program. In short, that the procedures mandated by Vehicle and Traffic Law § 1193 (2) (e) (1) have been in place for some time is not in any way determinative of the challenge presently before this court.
The seven-point analysis articulated in Kennedy (supra), as undertaken by the courts in Micich and Hamilton (supra), emphasizes the necessity of affording a defendant motorist due process in a suspension proceeding, particularly where the sanction of suspension is clearly punitive in nature and imposed in the context of a criminal proceeding. Given the foregoing, and for the specific reasons hereinafter articulated, it is this court’s determination that the suspension procedure set forth in Vehicle and Traffic Law § 1193 (2) (e) (7) is violative of the defendant’s due process rights. In examining the defendant’s assertions, the following appear to have the greatest import:
1. Adequate notice or warning of the suspension process is not provided. Unlike the refusal suspension process under *910 Vehicle and Traffic Law § 1194 (2), which involves a statutorily mandated warning to a motor vehicle operator as to the potential suspension/revocation of his/her license, if he refuses to take a chemical test, section 1193 (2) (e) (7) contains no notice provision. All that the motorist receives at time of arrest is an appearance ticket. Particularly given the fact that there is no provision for a prompt postsuspension hearing, such notice is particularly important to provide opportunity to prepare and defend. (See, Goldberg v Kelly, 397 US 254, 267-268.)
2. There is no meaningful hearing. The statute provides that the court is to make findings on two issues: first, that the accusatory instrument conforms to the requirements of CPL 100.40; and, second, that there exists reasonable cause to believe that the defendant operated a motor vehicle with blood-alcohol content of .10% or more. As provided by the statute, the defendant is entitled to an opportunity, after the court makes it findings, to make a statement regarding the two issues and to present evidence tending to rebut the court’s findings.
This process does not provide a meaningful opportunity for the motorist to present a defense. As a practical matter, the defendant is not provided with a copy of any supporting deposition (or long form information, if one is used), until the appearance in court. Discovery has not occurred (which normally would include documents relating to any chemical test). The defendant thus has no opportunity to perform the kind of review and analysis that normally would be expected in dealing with issues such as the sufficiency of accusatory instruments and reasonable cause to believe that the motorist was operating a vehicle with more than .10% blood alcohol.[5]
To require that the motorist be prepared to address those issues adequately, without notice or opportunity to prepare, is not sufficient due process.
3. "Reversal” of burden of proof, presumption of innocence. To compound the inadequacy of the hearing afforded, it is clear that the law anticipates that any "defense” presented by *911 a motorist will be in response to the court’s findings, as rebuttal.[6] This turns the hearing process on its head, and requires the defendant to "disprove” findings already made by the court. Given the criminal proceeding and context, this would appear to be an impermissible shift in the burden of proof.[7] Finally, this statutorily mandated hearing process dispenses with any presumption of innocence, which is the linchpin of defendant’s rights in any criminal proceeding.
CONCLUSION
By reason of the foregoing, it is this court’s conclusion that the suspension process mandated by the statute is part of the criminal proceeding, and that such process does not comport with the due process requirements of the New York State or Federal Constitution. Section 1193 (2) (e) (7) of the Vehicle and Traffic Law is, accordingly, found to be unconstitutional and will not be applied or enforced against the defendant. The defendant shall, however, appear for completion of arraignment as scheduled.

. Defendant’s notice of motion indicated that defendant also sought suppression of the chemical tests made of the defendant, but that issue was not addressed further in the moving papers, nor was suppression sought in the request for relief. Determination of that issue is therefore reserved pending any further motions which may be made in this case.

. The extent of the effect of driving while intoxicated can be illustrated by the court’s own experience with a jury selection process in a driving-while-intoxicated trial. A jury pool of some 40 citizens was almost completely depleted due in large part to a substantial number of prospective jurors who were dismissed for cause, because a family member or close acquaintance had been killed or injured by a drunk driver.

. While this court applauds an objective which would keep drunk drivers off the road, as a practical matter this law may not have the intended effect. In most cases, a motorist charged with DWI is given an appearance ticket. At least in the Chili court, that ticket is returnable two to three weeks later. (In more rural courts, this delay could well be much longer.) During that time, the motorist retains his license and is permitted to drive.

. To describe the suspension process as simply an "administrative” proceeding is fanciful wordplay. This is a criminal proceeding, from the filing of the information through to sentence. No Judge should wear two hats (an administrative one and a judicial one), just as no man should serve two masters. To that extent, this court is sympathetic to Judge Sirkin’s decision in Pringle v Wolfe (164 Misc 2d 733) and to Judge Muller’s decision in People v Micich (supra; see also, People v Wetzler, Just Ct, Town of Southeast [Putnam County], May 10, 1995 [finding that the statute requires an impermissible intertwining of the judicial branch and executive branch]), although this court does not rely on that point as basis for its decision.

. In this regard, it would appear that the law suffers from, at the least, poor draftsmanship. The suspension procedure makes the "time of arrest” the operative point in terms of the driver’s blood-alcohol content, while the actual criminal offense defined in Vehicle and Traffic Law § 1192 (2) makes the operative point the time of operation of the vehicle. This, in itself, creates an ambiguity or inconsistency, which, at the least, further "taints” the constitutionality of the statute.

. Interestingly, the law makes no provision for a situation in which the defendant’s rebuttal may, indeed, overcome the court’s findings. It is highly unlikely (at the least, contrary to human nature) that a court, once having made findings on the record, would reverse itself. It would certainly appear that the law was drafted in contemplation that the suspension would occur, no matter what statement or evidence might be made or presented.

. Though not raised by the defendant in his moving papers, a proceeding in criminal court which involves judicial findings as to sufficiency of accusatory instruments, and reasonable cause to believe that the motorist operated a vehicle with more than .10% blood alcohol, followed by the imposition of a clearly punitive sanction, raises double jeopardy issues. Given the posture of this case and the court’s decision, those issues are not properly presented here (but see, People v Hamilton/Baptista, supra).