Ftjld, J.
The defendants Rodriguez and Carde stand convicted of common-law premeditated murder for the ldlling of Jose Torres and Noreen Russell.
The bodies of the two victims who had been fatally shot were discovered in the early morning of Sunday, January 22, 1961, in the muckland area of the Town of Shelby in Orleans County and a 1955 Chevrolet automobile belonging to Torres was found nearby. It was the People’s theory that the defendants committed the murders as part of a plan to steal the car and their case rested almost entirely upon statements made by the defendants which thoroughly implicated them. There is no need to review the proof in any detail, for study of the record discloses errors which call for reversal of the judgments of conviction.
Carde was taken into custody between 8 and 8:30 p.m. on the day the bodies were discovered. A native of Puerto Rico, he was unable to speak English and an interpreter was called in to enable the police to interrogate him. In the statement which lie then gave, Carde admitted that he had been present when Rodriguez committed the murders and that, three days earlier, the latter had shown him a gun and told him that he intended to use it to “ shoot someone”. On the following day, Monday, January 23, about 4:00 p.m., Carde was brought before a justice of the peace for arraignment. A sworn information charging him with first degree murder was filed, the charge was read to him and he was advised of his rights. However, since Carde did not understand English, he was unable to comprehend the pro *284 ceedings and they were adjourned for two days, until 7:30 p.m. of January 25, to enable the authorities to procure an interpreter.
On Wednesday, January 25, some hours before the postponed arraignment was held, Carde was again questioned by the police. The interpreter (Ronald Gardner), who participated in this interrogation, testified that Carde said that he had agreed to a plan, suggested by Rodriguez, to steal Torres’ auto and, if necessary to effectuate the theft, to kill Torres; that he and Rodriguez met Torres and Noreen on Saturday night at a restaurant; that, after remaining there for a short time, the four of them left together in Torres ’ car; and that, after driving for some distance, Rodriguez ordered Torres to stop the car and then proceeded to shoot both him and the girl.
This statement obviously constituted a complete confession, but, just as obviously, it should not have been received in evidence. As our recital of the chronology indicates, it was obtained from Carde after he had been arraigned before a justice of the peace. This being so, as we recently held in People v. Meyer (11 N Y 2d 162), it matters not that the defendant gave his statement before indictment. It is the interrogation, in the absence of counsel, after the criminal proceeding has been commenced, whether by grand jury indictment or by a charge placed before a magistrate following an arrest, which is forbidden. The procedure followed by the law enforcement officers not only violated Garde’s right to assistance of counsel (N. Y. Const., art. I, § 6; Code Crim. Pro., §§ 8,188, 308, 609), but also infringed upon his privilege against self incrimination. (See People v. Meyer, 11 N Y 2d 162, supra; People v. Waterman, 9 N Y 2d 561; People v. Di Biasi, 7 N Y 2d 544.)
The present case may not be distinguished from Meyer (11 N Y 2d 162, supra) on the ground that the arraignment was not concluded until after the police had finished questioning the defendant. The indisputable fact is that the criminal proceeding had been begun before the police elicited the January 25th statement from him. The proceeding may not be disregarded, or deemed not to have occurred, because Carde did not understand what was going on; it was this very lack of understanding on his part which furnished “good cause” for the adjournment (Code Crim. Pro., § 191). It follows, therefore, *285 that the questioning to which Carde was subjected, following his January 23d arraignment, was impermissible.
The error in admitting the statement was grossly prejudicial to Garde and in and of itself calls for a reversal as to him. Since his confession fully implicated his codefendant, Rodriguez, its erroneous reception also requires reversal of the latter’s conviction “ in the interest of justice.” (People v. Waterman, 9 N Y 2d 561, 567, supra; People v. Noble, 9 N Y 2d 571, 575.)
This is dispositive of the appeal, but, since a number of the questions now advanced on behalf of Rodriguez — ranging from the invalidity of the indictment to the incompetence of an interpreter—•will be raised again upon the new trial, we deem it desirable to treat them briefly.
There is nothing to the contentions directed at the superseding indictment. Rodriguez and Garde were jointly indicted in February of 1961. The trial judge granted a motion made by Garde to dismiss the indictment against him on the ground that he was prejudiced by the introduction of inadmissible evidence before the grand jury and directed resubmission of the case to another grand jury. The district attorney, to assure a joint trial, thereupon resubmitted the case against Rodriguez as well as Garde and, in June of 1961, that body voted another indictment, identical to the earlier one charging both defendants jointly with the murders. Rodriguez demurred to the indictment, claiming (in effect), first, that no court order had been obtained to permit resubmission of the case against him and, second, that procuring the new indictment violated his right to a speedy trial. He also moved for an inspection of the grand jury minutes or, in the alternative, for a dismissal of the indictment on the ground that it was not founded on legal or adequate evidence. The court overruled the demurrer and denied the motion for inspection and dismissal.
Mere statement of the speedy trial point indicates its lack of merit and, with respect to the claim that the evidence before the grand jury was insufficient, we need merely say that our examination of the grand jury minutes reveals the contention to be without substance. As to the argument that a court order was necessary to justify a resubmission, we may be almost as brief. Such an order is made essential by statute only if an earlier indictment had been dismissed upon demurrer under *286 section 323 of the code (see Code Crim. Pro., § 327) or upon motion under section 313 (see Code Crim. Pro., § 317) or following the grand jury’s refusal to indict upon a prior submission (see Code Crim. Pro., § 270). Since there had been neither a court dismissal of the indictment against Bodriguez nor an initial refusal by a grand jury to indict, the district attorney was free to resubmit the case and obtain a superseding indictment without further court direction. (See People v. Leyra, 1 N Y 2d 199, 202; People v. Rosenthal, 197 N. Y. 394, 401.)
Upon the trial, and on this appeal, Bodriguez argued that certain statements of his were improperly received in evidence, that he had been induced to confess to the killings after being confronted with a gun and other articles illegally obtained from his room. If, as he asserts, any of his statements were the product or fruit of an illegal search and seizure, they should have been excluded; the rule announced in Mapp v. Ohio (367 U. S. 643) renders inadmissible not only the items obtained, but any evidence which stems from their use. As the Supreme Court put it, “ The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all. * * * If knowledge of [facts] is gained from an independent source they may be proved like any others, but the knowledge gained by the Government’s own wrong cannot be used by it in the way proposed.” (Silverthorne Lbr. Co. v. United States, 251 U. S. 385, 392; see, also, Costello v. United States, 365 U. S. 265, 278-280; Walder v. United States, 347 U. S. 62, 64-65; Nardone v. United States, 308 U. S. 338, 340-341.) In short, the exclusionary rule covers not only the evidence illegally obtained, but the product of the unlawful search as well. The underlying rationale is that government may not violate the constitutional guarantee (U. S. Const., 4th Amdt.) and “ use the fruits of such unlawful conduct to secure a conviction.” (Walder v. United States, 347 U. S. 62, 64-65, supra.) And, obviously, it matters not that these “fruits” happen to be confessions rather than some other-type of evidence. (Cf. Costello v. United States, 365 U. S. 265, 278-280, supra.)
Upon the new trial, therefore, it will be incumbent on the trial court, in connection with the defendant’s motion to sup *287 press the challenged statements (see Code Crim. Pro., §§ 813-c, 813-d, 813-e, as added by L. 1962, ch. 954, § 1), to hold a hearing in advance of the trial and decide the issues presented, namely, whether there was an illegal search and seizure and, if there was, whether Rodriguez’ confession was induced by confrontation with the illegally obtained articles. The police officers assert that Rodriguez gave his consent to their entering his room and searching it. Rodriguez denied that he did so. Contrary to the ruling of the court below, he was free, even though then under arrest, to authorize a search of his room and, accordingly, the contradiction in testimony between the police and the defendant simply creates a question of credibility to be resolved by the trial judge. If he determines that Rodriguez actually did give his consent, not ‘ ‘ in submission to authority ’ ’ but rather as “an understanding and intentional waiver of a constitutional right” (Johnson v. United States, 333 U. S. 10, 13), then, the police were privileged to search his room without obtaining a search warrant, despite the fact that he was under arrest. If, on the other hand, the judge finds that the defendant did not in fact consent to the search, then, the articles were obtained illegally and, if Rodriguez was induced to confess as a result of being confronted with such articles, his confession may not be received in evidence. (Cf. Costello v. United States, 365 U. S. 265, 278-280, supra.)
This brings us to the final matter for discussion, the competence of an interpreter. Rodriguez spoke a broken English, and it was in English that the police interrogated him. He made three statements, the third one being taken down in writing. After it was typewritten, but before Rodriguez signed it, one Pedro Gonzalez was called in by the police to read it to him in Spanish, and the jury was told that it could take this into account in considering the weight to be given to the statement. However, and it is unnecessary to go into detail, Gonzalez’ unfamiliarity with the English language, in general, and with the meaning of a number of relatively simple words contained in Rodriguez’ statement, in particular, demonstrates a lack of ability on his part to act as an interpreter and required the trial court to rule him disqualified from testifying as such. It may not be amiss to add that, although Gonzalez will not again be called upon to testify as an interpreter, this does not necessarily mean that the *288 statement may not be offered upon the new trial. Since questions were put to Bodriguez, and answers taken from him, in English, the People may be able to establish, to the jury’s satisfaction, that he knew enough English to understand the meaning and import of the statement in question.
The judgments of conviction should be reversed and a new trial ordered as to each defendant.