UNITED STATES of America ex rel. Floyd Edgar MARTIN, Petitioner,

v.

Hon. Robert E. MURPHY, Warden of Auburn Prison, Auburn, New York, Respondent.

Civ. No. 8131.

United States District Court
N. D. New York.
Aug. 31, 1962.

Andrew V. Clements, Albany, N. Y., for petitioner.

Louis J. Lefkowitz, Atty. Gen. of New York, Albany, N. Y., for respondent Warden, Roger E. Davis, (now retired), Dist. Atty., Wayne County, Newark, N. Y., Raymond B. Madden, Asst. Atty. Gen., of counsel.

JAMES T. FOLEY, District Judge.

In a seven-page memorandum-decision and order dated September 1, 1960, I denied without a hearing a petition filed by Martin for a writ of habeas corpus. (D.C., 187 F.Supp. 395). As expressed in the decision, I granted therein without further application a certificate of probable cause to review such denial because of the many imponderables and immense variety of viewpoint expressed by the federal appellate judges in relation to the question presented.

Such question is undeniably one of federal substance but, incredibly, in my judgment, has now become a common and routine challenge in this District Court. (See United States ex rel. Kiernan v. LaVallee, D.C., 191 F.Supp. 455). It involves the admission in evidence of two confessions taken from the petitioner by the State Troopers of New York during his trial in 1946 resulting in a conviction by a jury of murder, first degree, and a sentence to death by execution rendered on November 7, 1946. The death sentence, after unanimous affirmance by the Court of Appeals, New York, was commuted June 4, 1947 by Governor Dewey to life imprisonment.

There is no need for repetition of the totality of facts and circumstances that I gleaned and reviewed from

the lengthy State trial record and thought compelling to support my conclusion that neither confession was coerced or involuntary. My conclusion was based upon the prescribed federal test outlined in numerous writings by the Supreme Court, and read often by reason of continuous contact with these murder cases. It is that the search for violation of the Fourteenth Amendment and its constitutional concept of due process must be an appraisal of all the circumstances in the differing factual situations. In one of his last great contributions to this important field of federal-state relationship in the administration of criminal justice involving confessions used in State trials, Mr. Justice Frankfurter in a massive review of the federal principles and limitations, in my judgment, again brings back balance, practicality and wisdom to these delicate problems. His flinty and keen remarks as to the consequences of the presence of a lawyer at these police interrogatories point out the facts of life known to every lawyer and judge with experience in the criminal field. There is renewed clarity of a principle so necessary to preserve the balance in the interests of society by the expression that in a long series of cases the Supreme Court has held that the Fourteenth Amendment does not prohibit a State from such detention and examination of a suspect as, *under all the circumstances*, is found not to be coercive. It is emphasized that the McNabb rule for federal criminal cases has not been extended to State prosecutions as a requirement of the Fourteenth Amendment. The foremost principle which should alleviate some of the confusion in these delicate problems is phrased by stating that the ultimate test remains that which has been the only clearly established test in Anglo-American courts for two hundred years: the test of voluntariness. (Culombe v. Connecticut, 367 U.S. 568, 578–579, 590–592, 600–602, 81 S.Ct. 1860, 6 L.Ed.2d 1037).

■ This dissertation is far afield from the simple task before me. By a per curiam decision and order dated December 14, 1960, the Court of Appeals granted the petitioner leave to appeal in forma pauperis, "and upon the papers before us the case is remanded to the district court for a determination whether the relator was timely notified of his right to counsel after arraignment. See Crooker v. [State of] California, 357 U.S. 433, 439 [78 S.Ct. 1287, 2 L.Ed.2d 1448] (1958); U. S. ex rel. Reid v. Richmond, 277 F.2d 702 (2nd Cir. 1960); cf. People v. Di Biasi, 7 N.Y.2d 544 [200 N.Y.S.2d 21, 166 N.E.2d 825] (1960)." It would seem a simple remand with narrow search for limited determination that could be easily accomplished by the most inexperienced fact-finder. However, I am frank to say, with all respect, that concern on my part is present because my perception is that the clause "timely notified of his right to counsel after arraignment" seems to give import and serious connotation to an isolated factor that from my viewpoint of the federal province may only be weighed as one pertinent element in the totality of circumstances. "Timely" has meaningful legal significance even to the law student, and to the dictionary reader means seasonable or opportune.

As directed by the Court of Appeals, I appointed as counsel Dean Andrew V. Clements to represent the petitioner in the presentation of his case. Although not so directed, the petitioner was brought down from Auburn Prison to Albany by a writ of habeas corpus ad testificandum, a hearing held, and the petitioner testified, although he did not take the stand in his original trial in 1946. It was a most satisfactory hearing. Assistant Attorney General Madden and District Attorney Davis of Wayne County participated in behalf of the Warden and the People of the State of New York. An unusual occurrence in these long delayed challenges, and in my opinion one fortunate for the People, was that the Justice of the Peace before whom Martin was arraigned in 1946 and the District Attorney who prosecuted and convicted Martin testified at the hearing. The minutes were transcribed by my or-

der for the use of Dean Clements who filed them with me with his scholarly brief. Such minutes shall now be filed by the Clerk of the Court as part of the record. My references hereinafter are to the transcript of the hearing.

My overall impression of the testimony at the hearing is that the petitioner was not victimized in the taking of either statement by physical or psychological coercion. In my mind, my previous judgment was reinforced after the evaluation of the testimony produced at the hearing that both confessions were freely and voluntarily given. The petitioner admitted the troopers used no physical force or violence or threats of the same during his interrogation in either instance. (Tr. 28–29). His background was not that of the illiterate, the uneducated, or the imbecile that gives concern in these situations as easy targets for overreaching by experienced questioners. He was twenty years of age, had two years of high school and served three years in the Navy in theaters of war, and was discharged as Quartermaster, Second Class March 13, 1946. (Tr. 7–10). As to the statement taken at the County Jail on August 6, 1946, after he had been arraigned July 31, 1946, the petitioner testified that one trooper asked most of the questions and typed the answers, the petitioner corrected the statement with pen and ink, signed his initials and gave the answers that were typed. (Tr. 32–37). There is no convincing evidence that he was intentionally deprived of food or drink during either interrogation. (Tr. 12, 20, 38, 62).

■ As to the notification of his rights to counsel at the arraignment, I find from the record that both the lay Justice of the Peace before whom he was arraigned and the District Attorney, both involved in their first murder case in a rural county, gave fair notice humanely to the petitioner that he was entitled to a lawyer and adjournment to obtain a lawyer. (Resp.Ex.A.; Tr. 43, 57, 58). The petitioner would only say he did not recall such advice from the Judge.

I was impressed by the attitude of both the Judge and the District Attorney as to their fairness and decency, and believe the testimony that Martin said at the arraignment: "I told the Troopers all there is to it. I want to get this thing over with and will wait until some later time before I have any lawyers." (Tr. 58).

■■ It is also evidence of honest recollection, in my judgment, that District Attorney Livingston would not state definitely that he again advised the petitioner of his right to counsel before the second confession for clarification was taken on August 6, 1946 at the County Jail. I do find and determine that the District Attorney again to his credit did warn the petitioner he did not have to answer if he did not want to; and again the attitude of the petitioner was that he was glad to answer anything. (Tr. 61–62). Whether this is timely notification of his right to counsel is, of course, dubious because it does seem obvious, without being facetious, that notice in the timely sense legally might warrant oral or written warnings of the impending interrogation at least forty-eight hours beforehand. However, I am willing to conclude that the notice given at the arraignment in accord with the settled procedures of New York in this preliminary stage was timely in the sense that it did not infect the admission of the confession in evidence at the trial with fundamental unfairness. There is no indication in any part of the testimony that the petitioner requested or wanted the advice of counsel and was rebuffed. (Crooker v. State of California, 357 U.S. 433, 437, 443, 78 S.Ct. 1287, 2 L.Ed.2d 1448; Cicenia v. La Gay, 357 U.S. 504, 508, 78 S.Ct. 1297, 2 L.Ed.2d 1523; Spano v. People of State of New York, 360 U.S. 315, 324, 79 S.Ct. 1202, 3 L.Ed. 2d 1265; U. S. ex rel. Reid v. Richmond, 2 Cir., 295 F.2d 83, 86, 88 fn. 6, cert. den. 368 U.S. 948, 82 S.Ct. 390, 7 L.Ed. 2d 344).

Since the Spano case, the Court of Appeals, New York, has made striking extensions of the rule concerning the in-

admissibility of statements taken from an accused not made in the presence of counsel after indictment and even after arraignment. (People v. Waterman, 9 N.Y.2d 561, 216 N.Y.S.2d 70, 175 N.E.2d 445 (1961); People v. Di Biasi, 7 N.Y.2d 544, 200 N.Y.S.2d 21, 166 N.E.2d 825 (1960); People v. Meyer, 11 N.Y.2d 162, 227 N.Y.S.2d 427, 182 N.E.2d 103 (1962); People v. Rodriquez, 11 N.Y.2d 279, 229 N.Y.S.2d 353, 183 N.E.2d 651 (1962). However, these extensions, considerable and commendable though they be, cannot be used to alter the settled federal standard as to the "totality of circumstances" in the search for federal constitutional violation and prohibition. In a recent case, Judge Hays thought such New York principles should be extended to the federal law enforcement activity where an electronic machine was planted covertly in an automobile by federal narcotic agents to obtain incriminating statements from a defendant then under federal indictment. Writing for the majority upholding the admission of the eavesdrop evidence, Chief Judge Lumbard maintained the federal and state distinctions and analyzed the Spano ruling as one found by the Supreme Court majority as a confession produced by coercion regardless of the indictment factor. U. S. v. Massiah, et al., 2 Cir., 307 F.2d 62.

■■■■ In my judgment, the civil process of federal habeas corpus is of limited scope by federal statute and settled case law, to be narrowly used for inquiry into alleged federal constitutional violations. Determination of the admissibility of confessions is a matter of state and local procedure. (Rogers v. Richmond, 365 U.S. 534, fn. 3, 81 S.Ct. 735, 5 L.Ed.2d 760; Culombe v. Connecticut, supra, 367 U.S. pgs. 588, 605, 81 S.Ct. 1860). The States are to have the widest latitude in the administration of their own system of criminal justice. (Hoag v. State of New Jersey, 356 U.S. 464, 468, 78 S.Ct. 829, 2 L.Ed.2d 913). Justice Douglas cautions the Great Writ should be guarded jealously using it only to prevent gross miscarriage of justice.

(Chessman v. Teets, 354 U.S. 156, 173, 77 S.Ct. 1127, 1 L.Ed.2d 1253). Under these settled, practical principles, it seems clear to me that any extension, prospective or retroactive, of the rule in New York State procedures concerning admissibility of confessions should be left to the Court of Appeals, New York. That Court again has shown its awareness and zeal to safeguard the rights of the accused in that State, ofttimes—from my reading of their opinions—going far beyond the requirements of constitutional procedures required by the United States Supreme Court.

The nature of the remand, in my judgment, requires only a stated determination as to the one factor, which I have done herein, and not reappraisal or reconsideration of my previous denial. If such is necessary, under the federal standards, I would reaffirm such denial. The appeal in this matter is still pending because a motion to dismiss the appeal by the State was denied. This memorandum-decision, the transcript of hearing and the latest return of the Attorney General shall be forwarded forthwith by the Clerk of this Court to the Court of Appeals, Second Circuit, to be incorporated in and made part of the pending appeal record.

Teachers of the law have always been the foremost advocates of the highest principles and noble purposes of the law in its impact upon the unfortunate and indigent. Words of stereotyped expression are not in accord with my nature. There is a deep feeling of gratitude to Dean Clements, a distinguished educator and lawyer, for his dedicated, competent and prolonged assistance to the Court in this matter. His devotion to the cause of an indigent prisoner at great personal sacrifice and expenditure of valuable time from his own arduous duties was maintained willingly and unflaggingly with no thought of recognition and with disregard for material gain. Such voluntary effort is good example for the law student as well as the members of the higher echelon of the Bar.