UNITED STATES of America ex rel. James MORRISON, Relator-Appellant,

v.

J. Edwin LaVALLEE, Warden of Clinton State Prison, Dannemora, New York, Respondent-Appellee.

No. 393, Docket 28088.

United States Court of Appeals Second Circuit.

Argued June 14, 1963.

Decided June 19, 1963.

Matthew Muraskin and Leon B. Polsky, New York City (Anthony F. Marra, New York City, on the brief), for relator-appellant.

Philip Liebowitz, Asst. Atty. Gen. for State of New York and Sheldon Raab, New York City (Louis J. Lefkowitz, Atty. Gen., and Irving Galt, Asst. Sol. Gen., on the brief), for respondent-appellee.

Before LUMBARD, Chief Judge, and KAUFMAN and MARSHALL, Circuit Judges.

KAUFMAN, Circuit Judge.

Relator appeals from an order of Judge Foley, in the Northern District of New York, denying without a hearing his application for a writ of habeas corpus. Appellant is presently incarcerated under a term of imprisonment of thirty to sixty years resulting from a conviction by a jury in November 1941 of the crime of robbery. He seeks to overturn his state conviction which, he alleges, is unconstitutionally founded upon the improper admission into evidence of certain incriminating statements purportedly extracted from him by an "agent" of the police by coercive methods and in the absence of retained counsel.

Appellant was arrested on May 27, 1941, and indicted the following day, for a robbery committed in March of that year. He was remanded after indictment to the Richmond County jail to await trial. Also incarcerated in the same jail was James Corbett, his co-defendant, and one Marcus Thuna, who had been convicted of grand larceny and who while in prison was given certain privileges as a trusty. It was Thuna who, at relator's trial, was the principal witness for the state. He testified that he, because of his position as trusty, had freedom of access to both the first and second floors of the prison, where Morrison and Corbett respectively were confined, and that he passed oral and written messages between them at their request; contained in these messages, and in conversations between Thuna and each co-defendant, were incriminating statements introduced in evidence at their trial. Relator contends that Thuna was "planted" in the prison as an agent of the police and prosecution for the purpose of extracting confessions from him and Corbett.

We have before us the transcript of the appellant's trial in the State Court, in which Thuna testified in considerable

detail as to his relationship with the co-defendants and with the state police and district attorney's office. His testimony completely contradicts the allegations of appellant's petition, and for this reason, see Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); United States ex rel. McGrath v. LaVallee, 319 F.2d 308 (2d Cir., 1963), the order denying the writ of habeas corpus without hearing must be affirmed.

■ It is clear that under New York law, a confession extracted by post-indictment interrogation of a defendant in the absence of counsel is inadmissible at the trial. See People v. DiBiasi, 7 N.Y.2d 544, 200 N.Y.S.2d 21, 166 N.E.2d 825 (1960); People v. Waterman, 9 N.Y. 2d 561, 216 N.Y.S.2d 70, 175 N.E.2d 445 (1961); People v. Meyer, 11 N.Y.2d 162, 227 N.Y.S.2d 427, 182 N.E.2d 103 (1962); People v. Rodriquez, 11 N.Y.2d 279, 229 N.Y.S.2d 353, 183 N.E.2d 651 (1962). But the Supreme Court has expressly declined to decide whether this principle is one of federal constitutional law, and thus applicable on federal habeas corpus, see Spano v. New York, 360 U.S. 315, 320, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1960); although several Justices would apparently so hold, see 360 U.S. at 326, 79 S.Ct. at 1209, 3 L.Ed.2d 1265.

■ Any such principle would, in any event, be wholly inapplicable to the case before us, for at no time did Thuna ever interrogate the appellant on behalf of the police or the prosecution. Indeed, Thuna was first approached by Corbett for the purpose of conveying to appellant the message that when interviewed by the police he was to be sure to tell them that they had not seen each other for the preceding six months; at appellant's request, Thuna immediately delivered the same message to Corbett. Soon thereafter, Thuna, again at the request of each of the co-defendants, carried the message to the other that no one had identified either of them as a participant in the robbery and that there was nothing to worry about. In friendly conversations Corbett described to Thuna details as to the consummation of the robbery, including the fact that Morrison was wearing a mask at the time; and Morrison, on another occasion, put to Thuna the rhetorical question, "How in the Hell could they identify me when I had a mask on?" Thuna continued for a period of three weeks to relay oral and written messages from one defendant to the other. It was only after he had acted as a courier for one week that Thuna made known to the police and to an assistant district attorney the precise nature of his "services" to Morrison and Corbett. At that time, it was suggested that Thuna henceforth make and keep copies of the messages, which Thuna generally did.

In short, the state knew nothing of Thuna's activities until a week after they had commenced—commenced at the instigation of the co-defendants. By no stretch of the imagination could he be viewed as having been "planted" for the purpose of extracting confessions, for he had been transferred to the prison in which appellant was detained several months before the crime for which appellant was indicted was even committed. Thuna's role was principally that of an informant *after* the fact, and there is nothing whatever in the record to substantiate the claim that his function was affirmatively to extract confessions from the appellant. Similarly, there is nothing to suggest that the police or prosecution did anything except act as the willing recipient of evidence against the accused.

The state, in seeking affirmance, strongly relies upon United States v. Massiah, 307 F.2d 62, 65–66 (1962), cert. granted, 374 U.S. 805, 83 S.Ct. 1698, 10 L.Ed.2d 1030 (June 10, 1963). There, this Court held admissible the statements of a defendant which were recorded by means of a device placed in the automobile of a codefendant; the services of the latter were obtained for the purpose of securing a confession from Massiah. As persuasive as that case may be for affirmance in the case before us, reliance upon it is unnecessary for the simple reason that here,

disclosure of pertinent information was wholly initiated by the relator and his co-defendant for their own purposes; that form of interrogation which triggers the right to assistance of counsel is wholly absent. Needless to say, the claim of coercion is even less meritorious. We should hesitate long before holding that the mere disclosure to the authorities of statements overheard—without any attempt at extracting them from the speaker and without any participation or active suggestion by state agents (as was clearly the case for at least the first week of Thuna's activities)—is an unconstitutional denial of due process of law, remediable on federal habeas corpus.

We are grateful to Matthew Muraskin, Esq., who, as counsel assigned through the Legal Aid Society, has vigorously represented appellant in the preparation and presentation of this appeal.

Judgment affirmed.