[675 NYS2d 469]

In the Matter of Floyd W. Van Wie, Petitioner, v Patrick L. Kirk, as Herkimer County Court Judge, et al., Respondents.

Fourth Department, June 10, 1998

---

### APPEARANCES OF COUNSEL

*Alfred P. Kremer,* Rochester, for petitioner.

*Dennis C. Vacco, Attorney-General,* Syracuse, for respondent.

*Michael E. Daley, District Attorney* of Herkimer County, respondent *pro se.*

### OPINION OF THE COURT

DENMAN, P. J.

In this original CPLR article 78 proceeding, petitioner seeks a judgment prohibiting the prosecution of petitioner on indictment No. 94-21; dismissing that indictment; vacating two confessions of judgment executed by petitioner; vacating an affidavit in which petitioner withdrew his claim for workers' compensation benefits; directing the County of Herkimer to refund to petitioner any sums paid pursuant to those judgments; and directing that the matter, if remitted, be heard by a Judge other than respondent Honorable Patrick L. Kirk, Herkimer County Court Judge. In his brief, petitioner additionally requests appointment of a special prosecutor in place of respondent Honorable Michael E. Daley, Herkimer County

District Attorney (District Attorney), in the event that criminal charges are refiled against petitioner.

In seeking such relief, petitioner contends that he is innocent of any crime; that, if a crime was committed, it was committed against Oneida County, not Herkimer County; that, if a crime was committed, it was committed in Oneida County, beyond the jurisdiction of respondents; that the matter is within the exclusive jurisdiction of the Workers' Compensation Board (Board) and thus beyond respondents' jurisdiction; and that the prosecution violates the Ex Post Facto Clause of the Federal Constitution. Petitioner contends that Judge Kirk should have credited those contentions as a matter of law and granted petitioner's motion to dismiss the indictment, as assertedly required by this Court's prior decision in *People v Van Wie* (238 AD2d 876).

We conclude that prohibition does not lie against respondents in these circumstances and that our prior decision does not require dismissal of the indictment. We conclude, however, that petitioner is entitled to vacatur of the confessions of judgment and affidavit of withdrawal executed by him in connection with his plea, which was set aside by the effect of our prior decision (*see, People v Van Wie, supra*, at 877).

### THE WORKERS' COMPENSATION CLAIM

The prosecution of petitioner arises out of his pursuit of a claim for compensation pursuant to the Volunteer Firefighters' Benefit Law. Such benefits are paid by counties, as self-insurers, pursuant to the Workers' Compensation Law. The record establishes that petitioner was injured on May 30, 1990, while serving as a member of the Old Forge Fire Department in Herkimer County. Petitioner, a scuba diver, injured his back and leg while recovering a drowning victim from Fourth Lake. Petitioner reported the injury to his chief, but did not immediately file a compensation claim.

When the pain in his back and leg did not subside, petitioner visited Dr. Webster, his physician, on August 1 and 20, 1990. The doctor recorded the complaints, diagnosed petitioner with sciatica and a possible herniated disc, and referred petitioner to an orthopedist, Dr. Rinehart.

On September 18, 1990, petitioner reinjured his back while pulling another drowning victim from White Lake in Oneida County. At the time, petitioner was acting as a "borrowed servant" of the Forestport Fire Company in Oneida County, pursuant to a mutual aid agreement between Herkimer and Oneida Counties.

Petitioner first saw Dr. Rinehart on September 25, 1990. Dr. Rinehart observed that petitioner walked with a limp, was unable to bend forward, and was limited in the movement of his legs. Dr. Rinehart diagnosed petitioner with a "herniated nucleus pulposus L-5, S-1 left", prescribed pain medication, and ordered an MRI, which confirmed a "large herniated disc at 5-1 on the left."

Petitioner applied for workers' compensation benefits through the Forestport Fire Company on October 12, 1990, claiming total disability. The Forestport Fire Company submitted the claim to the Board, and petitioner began receiving full benefits from Oneida County on November 7, 1990, retroactive to September 25. Herkimer and Oneida Counties agreed that Oneida County would pay benefits provisionally, pending resolution of the issue of which county should be responsible. Neither county contested the legitimacy of petitioner's compensation claim.

On November 12, 1990, petitioner underwent a laminectomy by Dr. Rinehart and was discharged from the hospital two days later. Dr. Rinehart rendered postoperative care on November 20, 1990, December 18, 1990, and January 15, 1991. Because petitioner was still experiencing pain and various limitations, Dr. Rinehart filed a C-4 form on January 23, 1991, concluding that petitioner was totally disabled from work as a result of a compensable injury.

A Workers' Compensation Law Judge (WCLJ) initially heard the matter on January 29, 1991. Oneida County urged that the WCLJ direct payment pursuant to Workers' Compensation Law § 25 (1) (f), which provides for payment of benefits by one insuring entity where the only issue is which entity is responsible. Oneida County placed Herkimer County on notice of its potential liability. The WCLJ made a preliminary determination of total disability and confirmed the payment of benefits to date.

Between late January and October 1991, petitioner saw Dr. Rinehart 12 times and was referred to several other doctors and therapists. Dr. Rinehart recorded the continuing complaints of back and leg pain and continued to mark petitioner as disabled from work, despite his attempt to return to "light work" at Dr. Rinehart's urging.

In November 1991, another compensation hearing was held at which both Oneida and Herkimer Counties were represented. Again, the only issue raised was whether Oneida or Herkimer County was responsible to pay benefits. The WCLJ

continued the award at $340 a week based on a finding of total disability and adjourned the matter until January 1992, pending a physical examination by a physician for the Board. Without contesting the legitimacy of petitioner's claim, Herkimer County took the position that Oneida rather than Herkimer County should be responsible for benefits because petitioner had been serving Oneida County at the time of the reinjury.

After November 1991, petitioner continued to see Dr. Rinehart and was referred to another orthopedic surgeon, Dr. DuMond. Both doctors diagnosed petitioner as having a permanent partial disability rendering him unable to work.

At another hearing in May 1992, at which both counties again were represented, the WCLJ considered those diagnoses as well as the report of the Board's own physician. The Board's physician concluded that petitioner was totally disabled and referred him to the Department of Neurosurgery at Upstate Medical Center. The counties continued to dispute which county was responsible for payment of benefits, which the WCLJ again confirmed at a rate of $340 per week.

Beginning in July 1992, petitioner complained of problems with his knee. Dr. Rinehart ultimately diagnosed petitioner with a torn meniscus, recommended arthroscopy, and concluded that the knee problem was the result of petitioner's having favored his injured back. At the insistence of Oneida County, Dr. Rinehart obtained an independent medical opinion from Dr. Nastasi, who confirmed the knee injury.

In January 1993, the WCLJ held another hearing at which petitioner sought authorization for surgery on his knee. Again, the only issue raised was which county was responsible for payment. In February 1993, the WCLJ issued another decision confirming the award of $340 per week and authorizing surgery on petitioner's left knee. Dr. Rinehart performed that surgery on February 8, 1993. Following examinations in February, March, and April 1993, petitioner was found to have a permanent partial disability because of chronic back and leg pain.

In June 1993, the Board's doctor reiterated that petitioner had a temporary total disability as a result of his back injury and recent knee surgery. In September 1993, a different doctor for the Board found that petitioner had a permanent partial disability. The first report coincided with another hearing on June 1, 1993, which resulted in a further order, dated June 17, 1993, continuing the award of $340 per week based on a finding of disability. Herkimer County again asked the WCLJ to

determine which county was liable for benefits. On September 23, 1993, at Oneida County's request, the WCLJ reduced the benefits to $280 per week and reserved decision concerning which county was liable. Petitioner continued to see Dr. Rinehart and several other doctors throughout the remainder of 1993.

THE CRIMINAL INVESTIGATION, THE INDICTMENT, AND FURTHER PROCEEDINGS BEFORE THE BOARD

In September 1993, petitioner learned that he was being investigated by the Herkimer County District Attorney for fraud in pursuing the compensation claim. The apparent impetus for the investigation was a discrepancy in the medical records concerning the date of injury, and also the fact that petitioner had worked while receiving benefits. Upon learning of the investigation, Dr. Rinehart attributed the date discrepancy to his own misunderstanding, not to inconsistent statements by petitioner, and placed that explanation in petitioner's medical record. Dr. Rinehart admitted misrecording the date of the second accident, despite petitioner's consistently relating it as September 18, 1990, because Dr. Rinehart was confused by petitioner's reference to a third scuba diving incident (apparently nonservice related) occurring on September 24, 1990, in which petitioner aggravated the injury sustained on September 18, 1990. Further, Dr. Rinehart wrote a letter "To Whom It May Concern", explaining that he had encouraged petitioner to return to light duty for rehabilitation purposes, but that petitioner had been totally disabled throughout. Dr. Webster wrote a similar letter explaining the date discrepancy. Nevertheless, in October 1993, the District Attorney subpoenaed the workers' compensation file. Upon receiving the subpoena, Oneida County sought to suspend petitioner's benefits on the ground that an investigation was pending. By that time, Oneida County had paid petitioner $51,528 over three years.

In October 1993, the WCLJ held that Herkimer County was wholly responsible to pay the benefits, ordering it to reimburse Oneida County $51,528 and to make all prospective payments.

In November 1993, the District Attorney wrote Herkimer County, informing it of the investigation and citing alleged discrepancies in how and when the accident occurred and the fact that petitioner had worked while receiving benefits. In

that letter, the District Attorney erroneously stated: "When asked on his application for Compensation, Van Wie denies any prior back problems. Over the course of the claim he is examined by five (5) different doctors and denies to each any prior existing back problems." In fact, the application contains no denial of preexisting back problems; petitioner was not asked for that information. Moreover, various doctors' reports, including one specifically cited in the District Attorney's letter, refer to petitioner's history of back problems before September 18, 1990.

Upon receiving the District Attorney's letter, Herkimer County asked the WCLJ to rescind the decision of October 1993 on the ground that the legitimacy of petitioner's claim had "not yet been decided." The District Attorney subsequently informed the Board that the matter would be presented to a Grand Jury.

At a final hearing in December 1993, the WCLJ adjudicated the case closed and continued payments indefinitely at a rate of $280 per week based on a finding of permanent partial disability. The WCLJ again charged the entire award against Herkimer County, ordering it to reimburse Oneida County for past benefits and to assume payment of future benefits.

On March 24, 1994, a Herkimer County Grand Jury indicted petitioner for grand larceny in the second degree and insurance fraud in the second degree. The first count alleged that petitioner, in Herkimer County, stole more than $50,000; the second alleged that petitioner, in Herkimer County, committed a "fraudulent insurance act" by filing a false workers' compensation claim and thereby wrongfully took, obtained, or withheld property in excess of $50,000. Neither count specified from whom the money was obtained, and it appears that Herkimer County had neither reimbursed Oneida County nor paid any benefits to petitioner as of the date the indictment was filed. The District Attorney forwarded a copy of the indictment to the Board for its consideration on Herkimer County's appeal of the October and December 1993 decisions of the WCLJ. On June 6, 1994, the Board affirmed the disability finding as well as the determination holding Herkimer County responsible. The Board found that Herkimer County had not timely contested the legitimacy of the claim, which had been established by the WCLJ's pre-October 1993 decisions, none of which had been appealed.

Herkimer County took a further appeal before the Board, arguing that petitioner had been indicted on fraud charges and

that the Board's decision of June 6, 1994, together with the WCLJ's decisions of October and December 1993, should be rescinded pending the outcome of the criminal case. Herkimer County acknowledged that it had not paid any benefits to petitioner pursuant to the Board's orders and was therefore in default in the amount of $12,358. Apparently, Herkimer County did not pay that sum to petitioner until August 1994, months after the indictment was filed. The record does not disclose whether Herkimer County ever reimbursed Oneida County the sum of $51,528.

THE GUILTY PLEA AND ADDITIONAL

PROCEEDINGS BEFORE THE BOARD

On October 26, 1994, at the urging of counsel, petitioner pleaded guilty to insurance fraud in the fifth degree. The People accepted the plea on condition that petitioner withdraw his workers' compensation claim, confess judgment for repayment of benefits previously received, and waive his right to appeal.

Subsequently, the District Attorney notified Herkimer County of petitioner's plea of guilty and agreement to withdraw the claim and confess judgment for benefits previously received. Herkimer County in turn notified the Board. On November 3, 1994, petitioner was sentenced, in accordance with the plea agreement, to a conditional discharge. Pursuant to the agreement, petitioner signed a waiver of appeal and three affidavits: the first two confessing judgment in favor of Herkimer County in the amounts of $13,327.42 and $51,528, respectively; the third withdrawing the workers' compensation claim. Herkimer County forwarded those affidavits to the Board.

In September 1995, the Board upheld the WCLJ's October 1993 decision but rescinded the WCLJ's decision of December 1993, thus reopening the case and restoring it to the Board's Trial Calendar to allow Herkimer County to pursue the issue of fraud. The record does not establish whether Herkimer County availed itself of the opportunity to prove fraud in the administrative setting. According to the record, Herkimer County has "taken steps to enforce" the judgments against petitioner's home and other assets. Meanwhile, petitioner continued to treat with Dr. Rinehart, who continued to regard petitioner as totally disabled from working as a result of his back injury.

## THE CPL ARTICLE 440 MOTION
### AND OUR PRIOR DECISION

After retaining new counsel, petitioner moved in March 1996 to vacate the guilty plea and judgment of conviction. In support of his CPL article 440 motion, petitioner set forth the foregoing facts and argued, *inter alia*, that the People lacked jurisdiction to prosecute petitioner in connection with a workers' compensation claim, and in particular lacked authority to proceed under article 176 of the Penal Law. He further argued that plea counsel had rendered ineffective assistance in persuading petitioner that he had "no defense" to a prosecution to which there were obvious legal and factual impediments.

In response, the People submitted a three-page affidavit of an Assistant District Attorney, who did not deny the detailed factual allegations set forth in the motion papers, raise any countervailing allegations, or respond to most of the arguments raised by petitioner. The Assistant District Attorney merely averred that the People had the duty to prosecute violations of the Penal Law, that petitioner had pleaded guilty on the advice of counsel, and that petitioner had waived his right to appeal. County Court denied the CPL article 440 motion, finding that the District Attorney had jurisdiction to prosecute petitioner for insurance fraud and that the plea did not result from duress or fraud by the People or from ineffective assistance of counsel.

On appeal, this Court granted petitioner's CPL article 440 motion, vacated the judgment of conviction, and remitted the matter to County Court for further proceedings on the indictment. Based on petitioner's incontroverted factual allegations and documentary evidence, we held that plea counsel was "ineffective in advising [petitioner] to plead guilty to a patently unmeritorious charge without having investigated the facts, researched the law, or developed the record" (*People v Van Wie*, 238 AD2d 876, 877, *supra*).

### THE MOTION TO DISMISS THE INDICTMENT

Following our decision, petitioner moved to dismiss the indictment pursuant to CPL 210.20. He further moved to set aside his judgments by confession and his withdrawal of his workers' compensation claim. Petitioner argued that the People, by their failure to aver facts to the contrary, had conceded the truth of every allegation in petitioner's motion papers. Moreover, petitioner urged that this Court had determined, as a matter of law, that there was no merit to the

prosecution and that dismissal of the indictment thus was required by res judicata and the law of the case.

In opposition, the District Attorney noted that this Court had addressed only the validity of the conviction of insurance fraud, not the "remaining" grand larceny count. The District Attorney conceded that the insurance fraud count was baseless and that he had known that from the outset.* The District Attorney argued that he had jurisdiction to prosecute petitioner on the charge of grand larceny based on a theft allegedly committed in Herkimer County, and that it was irrelevant that petitioner did not victimize Herkimer County directly. With respect to petitioner's request to set aside the confessions of judgment and the affidavit withdrawing the compensation claim, the District Attorney stated that he had "no objection based upon the Appellate Division's decision vacating the conviction on insurance fraud."

In his decision, Judge Kirk framed the issue as "whether the original indictment is defective under Section 210.20 of the Criminal Procedure Law * * * leaving [County C]ourt without jurisdiction to proceed." Judge Kirk held that the deficiency of the People's response in opposition to petitioner's CPL article 440 motion did not bar the People from opposing petitioner's motion to dismiss the indictment. Judge Kirk noted that this Court had addressed only the narrow issue whether petitioner was competently represented by plea counsel, and had not determined that the indictment was defective or must be dismissed. Judge Kirk further noted that this Court had remitted the matter to County Court "for further proceedings on the indictment." Finally, Judge Kirk held, "the court will not at this time vacate any civil judgment nor the affidavit referred to by [petitioner]". Accordingly, Judge Kirk denied petitioner's motion in its entirety and ordered the case to trial.

---

* We find this admission by the District Attorney to be remarkable. Nowhere in his papers opposing the CPL article 440 motion or in his brief on the prior appeal did the District Attorney acknowledge the merit of petitioner's challenge to the insurance fraud conviction. Inasmuch as the District Attorney failed to inform this Court of the baselessness of the conviction, he appears to have been in serious dereliction of his ethical obligations to "seek justice, not merely to convict" (Code of Professional Responsibility EC 7-13; see, EC 7-14; DR 7-103 [A], [B] [22 NYCRR 1200.34 (a), (b)]), to avoid improper use of the criminal process (see, EC 7-21; DR 7-105 [A] [22 NYCRR 1200.36 (a)]), and to inform a tribunal of controlling legal authority directly adverse to his own position (see, EC 7-23; DR 7-106 [B] [22 NYCRR 1200.37 (b)]).

## THE PROHIBITION PROCEEDING

The trial has not taken place. Upon filing the instant CPLR article 78 petition, petitioner obtained a stay of proceedings. The petition alleges that our prior decision constitutes the law of the case and requires dismissal of the indictment. It alleges that the District Attorney lacks jurisdiction to pursue the grand larceny charge, and that Judge Kirk lacks jurisdiction to preside over the prosecution, because petitioner is innocent, because Herkimer County was not a victim, and because any alleged criminal conduct occurred in Oneida County. The petition further alleges that the grand larceny charge is legally groundless because the alleged wrongful conduct was not criminalized until after petitioner was indicted; because the prosecution usurps the exclusive jurisdiction of the Workers' Compensation Board; and because the prosecution constitutes an impermissible collateral attack upon the Board's decisions. Petitioner seeks an order prohibiting respondents from proceeding to trial on the indictment; dismissing the indictment; vacating the confessions of judgment and the waiver of petitioner's workers' compensation claim; refunding to petitioner any sums collected pursuant to the judgments; assigning another Judge; and/or appointing a special prosecutor.

Judge Kirk has not appeared in this proceeding (see, CPLR 7804 [i]). The District Attorney has appeared and, in lieu of answering, has submitted a three-page affidavit in which he contends that prohibition does not lie in these circumstances.

## PROHIBITION DOES NOT LIE TO BAR RESPONDENTS
### FROM PROCEEDING TO TRIAL ON THE INDICTMENT

The extraordinary writ of prohibition is available to address "whether [a] body or officer proceeded, is proceeding or is about to proceed without or in excess of jurisdiction" (CPLR 7803 [2]). Prohibition may be maintained to prevent or control judicial or quasi-judicial action as opposed to legislative, executive, or administrative action (see, Matter of Rush v Mordue, 68 NY2d 348, 353, n 3; Matter of Dondi v Jones, 40 NY2d 8, 13, rearg denied 39 NY2d 1058; see also, Matter of McGinley v Hynes, 51 NY2d 116, 123-124, rearg denied 51 NY2d 1009, cert denied 450 US 918). Where a prosecutor is representing the public in prosecuting accused criminals, as opposed to investigating whether a crime has been committed, the prosecutor is performing a quasi-judicial function and thus is subject, in ap-

propriate circumstances, to prohibition (*see, Matter of Haggerty v Himelein*, 89 NY2d 431, 435; *Matter of Schumer v Holtzman*, 60 NY2d 46, 51-52; *Matter of McGinley v Hynes, supra*, at 123-124; *Matter of Dondi v Jones, supra*, at 13). A prohibition proceeding may be brought to restrain a respondent from acting in a matter over which he has no power over the subject matter, or from exceeding his authorized powers in a matter over which he has jurisdiction (*see, Matter of Dondi v Jones, supra*, at 13; *Matter of State of New York v King*, 36 NY2d 59, 62). Although there is no sharp line between a respondent's acting in excess of his powers or merely acting in error (*see, Matter of McGinley v Hynes, supra*, at 124; *La Rocca v Lane*, 37 NY2d 575, 580, *cert denied* 424 US 968), the writ generally is not available to correct mere procedural or substantive errors (*see, Matter of Holtzman v Goldman*, 71 NY2d 564, 569; *Matter of Rush v Mordue, supra*, at 353). In order to prevail, petitioner must show such a lack or excess of jurisdiction "as to implicate the legality of the entire proceeding" (*Matter of Rush v Mordue, supra*, at 353). Moreover, the writ generally does not lie where the harm can be adequately corrected on appeal or by recourse to ordinary proceedings (*see, Matter of Rush v Mordue, supra*, at 354). The extraordinary remedy lies only where there is a clear legal right to relief (*see, Matter of Haggerty v Himelein, supra*, at 435; *Matter of Rush v Mordue, supra*, at 352).

We conclude that prohibition does not lie in these circumstances and that it would be inappropriate to grant petitioner's requests for dismissal of the indictment and for a judgment prohibiting respondents from proceeding with a trial thereon. There has been no showing that the indictment was illegally obtained or is defective on its face. Further, there has been no credible showing that respondents are so exceeding their jurisdiction "as to implicate the legality of the entire proceeding" (*Matter of Rush v Mordue, supra*, at 353; *cf., Matter of Dondi v Jones, supra*, at 15). It is clearly within the jurisdiction of respondents, respectively, to prosecute crimes and to preside over such prosecutions.

In our view, petitioner's primary argument is not cognizable in a prohibition proceeding, but may be raised only at trial and/or on direct appeal (*see, Matter of Arcuri v Kirk*, 231 AD2d 962, 963-964; *Matter of Price v Rath*, 177 AD2d 1057, *lv denied* 79 NY2d 758). That primary argument is that petitioner is innocent of any wrongdoing and that his conduct does not constitute the crime of grand larceny in the second degree. Petitioner

alleges that he is being prosecuted for pursuing a legitimate workers' compensation claim by lawful means and through lawful channels, and suggests that Herkimer County officials seek only to obtain an advantage in the civil matter.

Generally, the ordeal of a criminal trial and the possibility of conviction, standing alone, are not sufficiently harmful to warrant prohibition (*see, Matter of Rush v Mordue, supra*, at 354, citing *Matter of Dondi v Jones, supra*, at 14). Obviously, the very purpose of an indictment and trial is to resolve the issue of a defendant's guilt or innocence. Thus, petitioner's claim of innocence, however persuasive it may appear to be on this record, furnishes no basis for issuance of a writ or dismissal of the indictment (*cf., Rafferty v Owens*, 82 AD2d 582, 584-586). It will be the prosecution's burden to prove at trial that there was a larcenous "tak[ing]" or "obtain[ing]" of "property" from "an owner thereof" by "false pretenses" (Penal Law § 155.05 [1], [2] [a]). The prosecution must further establish that conduct constituting an element of the offense occurred in Herkimer County, or that petitioner intended or knew that the conduct would have a particular effect upon or in Herkimer County (*see*, CPL 20.40 [1] [a]; [2] [c]; *see also*, CPL 20.40 [4] [k]; *see generally, People v Ribowsky*, 77 NY2d 284, 291-294; *People v Sosnik*, 77 NY2d 858, 860-861; *Matter of Arcuri v Kirk, supra*, at 964). The indictment alleges a crime and a geographic basis for the prosecution, and no more is required at this stage. It is immaterial at this stage that numerous doctors' reports and a series of unchallenged determinations of the Board uniformly conclude that petitioner was disabled as a result of injuries sustained in the course of his service as a volunteer firefighter. It is likewise immaterial at this stage that Herkimer County may have suffered no loss at the time the indictment was filed, or that any subsequent loss sustained by Herkimer County may have been attributable to lawful orders of the Board rather than to any conduct by petitioner. We note that, contrary to petitioner's contention, the indictment does not state that the allegedly stolen property belonged to Herkimer County, nor would such an allegation be essential to a charge of grand larceny allegedly committed in Herkimer County.

Petitioner's remaining contentions likewise furnish no basis for prohibition. Prosecution of petitioner for grand larceny would not violate the Ex Post Facto Clause. In our prior decision, we noted that amendments extending Penal Law article 176 to claims submitted to workers' compensation self-insurers did not take effect until after petitioner was convicted (*see,*

*People v Van Wie*, 238 AD2d 876, 877, *supra*, citing L 1996, ch 635, §§ 23-24, 90). However, we did not address the validity of the grand larceny count under the Ex Post Facto Clause. Grand larceny was defined as a crime at the time of petitioner's alleged conduct, and it remains for determination at trial whether that conduct meets the definition of that crime. Thus, there is no merit to the argument that, because petitioner may not be prosecuted for insurance fraud, he therefore may not be prosecuted for grand larceny.

Similarly, there is no merit to petitioner's contention that the prosecution usurps the exclusive jurisdiction of the Board and constitutes an impermissible collateral attack on the Board's decisions. The Board has no jurisdiction over criminal prosecutions, which are within the jurisdiction of respondents. Further, the doctrine of collateral estoppel is inapplicable. The People were not a party to the proceedings before the Board, nor is there the requisite identity of issue (*see, People v Aguilera*, 82 NY2d 23, 29-31; *People v Goodman*, 69 NY2d 32, 38-40; *Brown v City of New York*, 60 NY2d 897, 898-899). Thus, there is no merit to petitioner's requests for an order dismissing the indictment and prohibiting respondents from proceeding thereon. There likewise is no merit to petitioner's alternative requests for an order appointing a special prosecutor and assigning the matter to a different Judge.

### PETITIONER'S OTHER REQUESTS

Petitioner further requests an order vacating his confessions of judgment in the amounts of $51,528 and $13,327.42, respectively, and his affidavit withdrawing the claim for workers' compensation benefits. The confessions of judgment and affidavit were executed by petitioner as a quid pro quo for his plea of guilty. Previously, we vacated the judgment of conviction entered upon that plea and remitted the matter to Herkimer County Court "for further proceedings on the indictment" (*People v Van Wie, supra*, at 877).

The confessions of judgment and affidavit of withdrawal were an integral part of the plea and must, like the plea itself, be set aside (*cf., People v Moore*, 66 NY2d 1028, 1029-1030; *People v Lafferty*, 177 AD2d 1043, 1044, *lv denied* 79 NY2d 921). Those documents are, like the plea expressly conditioned thereon, " 'out of the case forever and for all purposes' " (*People v Droz*, 39 NY2d 457, 463, quoting *People v Spitaleri*, 9 NY2d 168, 173). That is the inescapable thrust of our prior decision, by which we vacated the conviction and restored petitioner to pre-

plea status (*see, People v Van Wie, supra*, at 877). Indeed, the District Attorney expressly consented to vacatur of the confessions of judgment and affidavit, "based upon the Appellate Division's decision vacating the conviction on insurance fraud." Thus, petitioner has established a clear legal right to such relief. Although petitioner appears to be entitled to restitution of any funds paid to Herkimer County pursuant to the vacated confessions of judgment (*cf.,* CPLR 5015 [d]; 5523), Herkimer County is not a party to this proceeding and we thus have no power to direct such restitution.

Accordingly, the petition should be granted in part and judgment should be granted vacating the confessions of judgment and affidavit of withdrawal executed by petitioner as part of his now vacated guilty plea.

HAYES, PIGOTT, JR., BALIO and FALLON, JJ., concur.

Petition unanimously granted in part, without costs, and judgment granted in accordance with the opinion by DENMAN, P. J.