OPINION OF THE COURT
Robert H. Wagner, J.
The question presented for determination is whether subdivision 2 of section 1194 of the New York State Vehicle and Traffic Law which mandates suspension of a driver’s license prior to a revocation hearing because of the driver’s refusal to submit to a chemical test upon arrest for driving while intoxicated is void on its face as violative of the due process clause of the Fourteenth Amendment of the United States Constitution and section 6 of article I of the New York State Constitution.
Section 1194 of the Vehicle and Traffic Law provides in relevant part as follows:
“§ 1194. Chemical tests
“1. Any person who operates a motor vehicle in this state shall be deemed to have given his consent to a chemical test of his breath, blood, urine, or saliva for the purpose of determining the alcoholic or drug content of his blood provided that such test is administered at the direction of a police officer:
“(1) having reasonable grounds to believe such person to have been operating in violation of any subdivision of section eleven hundred ninety-two and within two hours after such person has been placed under arrest for any such violation, or
*282 “(2) within two hours after a breath test, as provided in section eleven hundred ninety-three-a of this chapter, indicates that alcohol has been consumed by such person and in accordance with the rules, and regulations established by the police force of which he is a member.
* * *
“2. [Effective Jan. 1, 1981. See also subd. 2 above.] If such person having been placed under arrest or after a breath test indicates the presence of alcohol in his system and having thereafter been requested to submit to such chemical test and having been informed that his license or permit to drive and any non-resident operating privilege shall be immediately suspended and subsequently revoked for refusal to submit to such chemical test, refuses to submit to such chemical test, the test shall not be given and a written report of such refusal shall be immediately made by the police officer before whom such refusal was made. Such report may be verified by having the report sworn to, or by affixing to such report a form notice that false statements made therein are punishable as a class A misdemeanor pursuant to section 210.45 of the penal law and such form notice together with the subscription of the deponent shall constitute a verification of the report. The report of the police officer shall state that he had reasonable grounds to believe such arrested person to have been driving in violation of any subdivision of section eleven hundred ninety-two of this chapter and that said person had refused to submit to such chemical test. The report shall be presented to the court upon the arraignment of the arrested person. The license or permit to drive and any non-resident operating privilege shall upon the basis of such written report, be temporarily suspended by the court without notice pending the determination of a hearing as provided in subdivision three of this section. Copies of such report shall be forwarded by the court, within forty-eight hours, to the commissioner. The court shall provide such person with a scheduled hearing date, a waiver form, and such other information as may be required by the commissioner. If a hearing, as provided for in subdivision three of this section, is waived by such person, the commissioner shall immediately revoke the license, permit, or non-resi *283 dent operating privilege retroactive to the date of refusal to submit to such chemical test in accordance with the provisions of subdivisions two, six and seven of section five hundred ten of this chapter.
* * *
“3. [Effective Jan. 1,1981. See also subd. 3 above.] a. Any person whose license or permit to drive or any non-resident driving privilege has been suspended pending revocation pursuant to the terms of subdivision two of this section is entitled to a hearing in accordance with a hearing schedule to be promulgated by the commissioner but no later than fifteen days after the date of the refusal to submit to a chemical test as required by this section. If the department fails to provide for such hearing within the time prescribed herein, the license, permit to drive or non-resident operating privilege of such person shall be reinstated pending a hearing pursuant to this section. The hearing shall be limited to the following issues: (1) did the police officer have reasonable grounds to believe that such person had been driving in violation of any subdivision of section eleven hundred ninety-two of this chapter; (2) did the police officer make a lawful arrest of such person; (3) was such person given sufficient warning, in clear or unequivocal language, prior to such refusal that such refusal to submit to such chemical test would result in the immediate suspension and subsequent revocation of his license or operating privilege whether or not he is found guilty of the charge for which he was arrested; and (4) did such person refuse to submit to such chemical test. If, after such hearing, the hearing officer, acting on behalf of the commissioner, finds on any one of said issues in the negative, he shall immediately reinstate such license or permit to drive or any non-resident operating privilege subject to any existing restriction, revocation, or suspension of such license or permit to drive or any non-resident operating privilege under this chapter. If, after such hearing, the hearing officer, acting on behalf of the commissioner finds all of the issues in the affirmative, he shall immediately revoke the license or permit to drive or any non-resident operating privilege retroactive to the date of the refusal to submit to a chemical test in accordance with the provisions *284 of subdivisions two, six and seven of section five hundred ten of this chapter. A person who has had his license or permit to drive or non-resident operating privilege suspended or revoked pursuant to this subdivision may appeal the findings of the hearing officer in accordance with the provisions of article three-A of this chapter. Any person may waive his right to a hearing under this section. Failure by such person to appear for his scheduled hearing shall constitute a waiver of such hearing, provided, however, that such person may petition the commissioner for a new hearing which shall be held as soon as practicable.
“b. Any person whose license, permit to drive, or any non-resident operating privilege is revoked pursuant to the provisions of this section shall also be liable for a civil penalty in the amount of one hundred dollars. No new driver’s license or permit shall be issued, or non-resident operating privilege restored to such person unless such penalty has been paid. All penalties collected by the department pursuant to the provisions of this section shall be the property of the state and shall be paid into the general fund of the state treasury.
“c. The commissioner shall promulgate such rules and regulations as may be necessary to effectuate the provisions of subdivisions one, two and three of this section.”
On January 4, 1981, while driving an automobile in the City of Rochester, New York, Stephen G. Ventura received a summons for passing a red light, driving without insurance and driving while intoxicated. In his official report the Rochester police officer wrote that upon stopping Ventura for a traffic violation, he observed that Ventura emitted a strong odor of alcohol, had red and bloodshot eyes, broken, hesitant and slurred speech and was swaying and staggering upon exiting the automobile. The report states that after Ventura was arrested and given the warning that refusal to submit to a chemical test would result in immediate suspension and subsequent revocation of his license, Ventura refused to submit to a chemical test. As mandated by statute, the arresting officer’s completed report was submitted to City Court Judge Charles T. Maloy and on Ventura’s arraignment on January 5, 1981, Judge Maloy immediately suspended Ventura’s driver’s license. *285 Ventura was informed that a revocation hearing was scheduled before the New York State Department of Motor Vehicles on January 15, 1981.
On January 14,1981 Ventura obtained an order to show cause why an order should not be made reinstating his driver’s license and staying any further proceedings by the Department of Motor Vehicles until a final determination on this motion.
Ventura seeks a judgment declaring that insofar as subdivision 2 of section 1194 of the Vehicle and Traffic Law provides for an immediate suspension of a driver’s license for refusal to submit to a chemical test before a hearing, it is unconstitutional on its face because it violates the basic constitutional requirements of notice and opportunity to be heard.[1] Thus, the sole issue presented is whether due process requires that a hearing be held prior to the suspension of a driver’s license.[2]
The appropriate procedure here is to convert the article 78 proceeding to a declaratory judgment action and then proceed to the constitutional issue (Matter of Horodner v Fisher, 38 NY2d 680; Matter of Harding v Melton, 67 AD2d 242, 245, affd 49 NY2d 739). It should be noted at the outset that there exists a strong presumption of constitutionality favoring a statute and petitioner here has the burden of establishing unconstitutionality beyond a reasonable doubt (Nik-O-Lok Co. v Carey, 52 AD2d 375, affd 40 NY2d 1089).
While the issue presented here appears to be a case of first impression in regard to the recent amendment of the New York Vehicle and Traffic Law, it has been dealt with by the United States Supreme Court under a similar Massachusetts statute.
In Mackey v Montrym (443 US 1) the Supreme Court sustained a Massachusetts statute which provided for an *286 immediate 90-day suspension of a driver’s license upon receipt of a police report. The police report had to be sworn to under the penalties of perjury and had to set forth the grounds for the officer’s belief that the person arrested had been driving a motor vehicle while under the influence of intoxicating liquors and that such person had refused to submit to a chemical test when requested by the police officer. The Massachusetts statute also provided for an immediate hearing upon the request of the driver on the issues of whether the police officer had reasonable grounds to believe that such person was operating a motor vehicle while under the influence of an intoxicating liquor, whether the person was placed under arrest and whether such person refused to submit to a test.
The court in Mackey determined the constitutional question by reference to the due process factors set forth in Matthews v Eldridge (424 US 319) and by reliance on its decision in the case of Dixon v Love (431 US 105).
In Matthews v Eldridge (424 US 319, 335) the court stated that: “identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government’s interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.”
In Dixon v Love (supra) the court was faced with the issue of whether an Illinois statute and administrative regulations which provided for an initial summary suspension or revocation of a license of a driver who repeatedly had been convicted of traffic offenses with a full administrative hearing available only after the suspension or revocation had taken effect was constitutionally adequate. After noting that the due process clause applied to the deprivation of a driver’s license by a State, the court analyzed the situation in terms of the factors considered in Eldridge (supra, p 115) and concluded “that the public interests present under the circumstances of this case are sufficiently visible and weighty for the State to make its *287 summary initial decision effective without a predecision administration hearing.” The public interests involved were in keeping those drivers unable or unwilling to respect safety and traffic rules off the road.
Here, in analyzing the first factor mandated by Eldridge — the private interest that will be affected by the official action — I recognize as the Supreme Court did in Mackey and Love that the interest in having a driver’s license is a substantial one. Nonetheless, the impact on the private interest involved under the New York statute when measured by the duration of any potentially wrongful deprivation and the timeliness of postsuspension review is certainly no more substantial than in Mackey and Love and, in fact, is probably less so.
In regard to the period of possible wrongful deprivation, the Massachusetts statute provided for a 90-day suspension and in Love, the Illinois statute and regulations allowed suspension for as long as a year and even allowed for the possibility of indefinite revocation. Subdivisions 2 and 3 of section 1194 of the New York Vehicle and Traffic Law provide that a hearing must be held within 15 days of the suspension or the license must be reinstated. If, after the conclusion of the hearing, the hearing officer finds that (1) the police officer had reasonable grounds to believe the person had been driving while under the influence of alcohol, (2) the police officer made a lawful arrest, (3) the driver was given sufficient warning that refusal to submit to the chemical test would result in the immediate suspension and subsequent revocation of his license and (4) that the driver refused to submit to the chemical test, he must immediately revoke the license for at least six months (Vehicle and Traffic Law, § 510, subd 6). If, on the other hand, the hearing officer answers any of the above in the negative, he must immediately reinstate the license. Thus, the duration of any potentially wrongful deprivation under the New York statute, 15 days, is indeed shorter than the periods involved in Mackey and Love[3] *5
*288 Insofar as the timeliness of the postsuspension review, it is true that the Massachusetts statute, unlike the New York statute, provided for an immediate hearing. However, that hearing could take place only after the driver requested it and after the suspension had occurred. Although the Illinois system contained a hardship provision,* **[4] the date for a postsuspension hearing did not have to be set until 20 days after a written request for the hearing by the driver. In contrast, the New York statute mandates that at the time he suspends a driver’s license the arraigning Judge must set the date for a hearing and the hearing must be held within 15 days or the license has to be reinstated.[5] Clearly, the New York statute provides timely postsuspension review.
Thus, I find the duration of any potentially wrongful deprivation and the timeliness of postsuspension review under the New York scheme is well within the periods found acceptáble in Mackey and Love and conclude that the private interest involved here, though substantial, is no more so than the interests involved in Mackey and Love.
The second due process factor set out in Eldridge concerns itself with the risk of an erroneous deprivation of the private interest through the procedure used, and the probable value, if any, of additional or substitute procedural safeguards.
In Mackey, the Supreme Court stated (443 US 1, 13, supra): “when prompt postdeprivation review is available for correction of administrative error, we have generally required, no more than that the predeprivation procedures used be designed to provide a reasonably reliable basis for concluding that the facts justifying the official action are as a responsible governmental official warrants them to be.”
Insofar as the second element of the Eldridge test is concerned the only argument Ventura makes is that the *289 Massachusetts statute required that the driver’s refusal to take the chemical test had to be witnessed by two officers wherein the New York statute does not have a witness requirement. The argument that this violates due process is without merit.
While the Supreme Court in Mackey noted that the Massachusetts statute required that the driver’s refusal be witnessed by two officers, I do not read the court’s decision as finding such witness provision controlling in any sense. Rather, the court placed heavy emphasis on the training and function of the position of a police officer. Specifically, the court stated (supra, p 14): “The officer whose report of refusal triggers a driver’s suspension is a trained observer and investigator. He is, by reason of his training and experience, well suited for the role the statute accords him in the presuspension process. And, as he is personally subject to civil liability for an unlawful arrest and to criminal penalties for willful misrepresentation of the facts, he has every incentive to ascertain accurately and truthfully report the facts. The specific dictates of due process must be shaped by ‘the risk of error inherent in the truthfinding process as applied to the generality of cases’ rather than to the ‘rare exceptions.’ Matthews v. Eldridge, supra, at 344. And, the risk of erroneous observation or deliberate misrepresentation of the facts by the reporting officer in the ordinary case seems insubstantial.”
These same principles are equally applicable under the New York statute. It may be noted that Ventura does not raise any argument as to any factual error contained in the police officer’s report. Moreover, although not required under the statute or, in my opinion, by due process, the driving while intoxicated warning given to Ventura in this case states that it was, in fact, witnessed by a police sergeant.
On approving the amendment to section 1194 of the Vehicle and Traffic Law requiring immediate suspension of an operator’s license upon refusal to submit to a chemical test as well as other related bills which curtailed the ability of individuals to plea bargain when charged with operating a motor vehicle while under the influence of *290 alcohol and drugs, and which lengthened the period of time for mandatory license suspension upon conviction of driving while ability impaired, Governor Hugh L.Carey stated: “This legislation will help to prevent senseless and tragic deaths and injuries caused by those who operate motor vehicles while under the influence of alcohol or drugs and reaffirm New York State’s commitment to keep the drunk and impaired motorist off our highways.” (McKinney’s Session Laws, 1980, p 1907.)
Thus, it is crystal clear that the governmental function involved here — the third step of the Eldridge test — is the State’s compelling and legitimate interest in public safety. Again, as the Supreme Court in Mackey stated (443 US 1, 18, supra): “The Commonwealth’s interest in public safety is substantially served in several ways by the summary suspension of those who refuse to take a breath-analysis test upon arrest. First, the very existence of the summary sanction of the statute serves as a deterrent to drunk driving. Second, it provides strong inducement to take the breath-analysis test and thus effectuates the Commonwealth’s interest in obtaining reliable and relevant evidence for use in subsequent criminal proceedings. Third, in promptly removing such drivers from the road, the summary sanction of the statute contributes to the safety of public highways.”
Based on all of the foregoing, I find petitioner has failed to sustain his heavy burden of showing that the lack of a presuspension hearing is violative of due process. I, therefore, decline the opportunity to declare subdivision 2 of section 1194 of the New York Vehicle and Traffic Law unconstitutional.

. Although Ventura, in his affidavits submitted in support of the order to show cause, raised the additional argument that subdivision 2 of section 1194 of the Vehicle and Traffic Law is unconstitutional because it forces a person to be a witness against himself, such contention was withdrawn at oral argument and, therefore,'need not be addressed now.

. Prior to January 1, 1981, the New York statute (Vehicle and Traffic Law, § 1194, subd 2) provided for a presuspension hearing.

. The 15 days between suspension and the hearing is the true measure of the period of any potentially wrongful deprivation. However, even the mandatory six-month period of revocation is well within the period found acceptable in Love. Moreover, an aggrieved driver may seek review of the hearing examiner’s decision by appealing to an appeals *288 board, which board has the discretion of granting a stay pending determination of the appeal (Vehicle and Traffic Law, §§ 260-262). Ultimately, judicial review is also available by means of a CPLR article 78 proceeding (Vehicle and Traffic Law, § 263).

. Subdivision 6 of section 510 and subdivision (2) of section 530 of the New York Vehicle and Traffic Law specifically prohibit a restricted use license based on hardship to a driver whose license is revoked for refusal to submit to a chemical test.

. It may be noted that Ventura’s hearing was scheduled within 10 days of suspension.