OPINION OF THE COURT
William R Biersack, J.
The defendant has moved this court by a pretrial motion for an order declaring Vehicle and Traffic Law § 1193 (2) (e) (7) unconstitutional.
Upon the submission of this motion the court determined that the motion presented a substantial question of law and sua sponte entered an order dated March 28, 1995 staying any court action to suspend any defendant’s driver’s license pursu *899 ant to the statute in question pending the final decision on this motion.
The defendant argues that Vehicle and Traffic Law § 1193 (2) (e) (7) is unconstitutional because it violates the defendant’s rights to the due process of law as guaranteed by both the Federal and State Constitutions.
The defendant specifically argues that this statute must fall since it fails to provide the defendant a meaningful hearing either prior to the mandated suspension or within a short time thereafter. (Bell v Burson, 402 US 535.)
The People respond that the statute "provides all of the due process that is due”. In support of this proposition it appears that the People argue that the constitutional right to due process must yield to the strong public policy purpose of "promoting safety by keeping the most dangerous drivers, those who are not deterred by the statute, from continuing to drive and endanger the public pending their criminal prosecution”.
This argument runs directly and squarely contrary to the rights afforded any defendant during the course of a criminal prosecution. The Criminal Procedure Law imposes upon the court the duty at arraignment to advise the defendant of his rights and not only accord him the opportunity to exercise such rights, but to further take such affirmative action as is necessary to effectuate them (CPL 170.10 [4] [a]). This statute affords the defendant the right at arraignment of having his license suspended with or without counsel and without a meaningful hearing. The opportunity to be heard after the court has made the mandated findings is particularly repugnant to our concept of due process and fundamental fairness.
Likewise, the court’s obligation to ensure and safeguard the defendant’s right to the presumption of innocence is undermined by the imposition of the sanction of suspension of the driver’s license prior to the adjudication of guilt beyond a reasonable doubt. In fact, during the pendency of the criminal prosecution, the sanction is imposed for conduct which is not criminal, to wit, having .10 of 1% or more by weight of alcohol in such driver’s blood at the time of arrest. (People v Mertz, 68 NY2d 136.)
The People argue that the Constitution does not require presuspension due process. Matter of Ventura (108 Misc 2d 281 [1981]) is cited in support of this argument. This of course is entirely correct in the case of an alleged chemical test refusal. However, that particular statute provides for a full hearing *900 before an Administrative Law Judge of the Department of Motor Vehicles (DMV) within 15 days of the suspension. Vehicle and Traffic Law § 1193 (2) (e) (7) affords the defendant no such comparable hearing.
The People further argue that Vehicle and Traffic Law § 1193 (2) (e) (7) meets constitutional muster since it meets the factors set forth in Mathews v Eldridge (424 US 319 [1976]). However, Mathews dealt with the temporary suspension of disability benefits prior to a hearing. The problem with this analysis is that Vehicle and Traffic Law § 1193 (2) (e) (7) does not direct a hearing prior to the suspension nor does it require one shortly thereafter. In fact, the People acknowledge that "There is no further administrative review of the Court’s administrative determination to suspend the license pursuant to V&TL Section 1193 (2) (e) (7).”
Troubling to this court is the fiscal reason underlying the legislative decision to direct the judiciary to undertake a full administrative action in the midst of a criminal proceeding. DMV First Assistant Counsel Shoen has acknowledged the consideration given to the fiscal impact upon the State of staffing the Administrative Adjudication Bureau with enough Administrative Law Judges to handle an expected or potential 50,000 cases above the present 11,000-12,000 chemical test refusal hearings currently handled. (1 NY DWI Bulletin No. 19, at 2.)
The State legislative analysis may have properly predicted no fiscal impact upon the State, but it totally failed to address the fiscal impact on the Town and Village Courts and local municipalities. Such action appears to be nothing more than an unfunded mandate enacted by the Legislature. When the State repeatedly and correctly complains of unfunded mandates sent from Washington, it is surprising that more consideration is not given to such impacts upon the counties and municipalities within the State.
The enactment of this legislation has resulted in many challenges across the State and has employed numerous different constitutional arguments. This court specifically declines to address the remaining arguments and challenges presented here when it has found that the statute unconstitutionally violates the defendant’s due process rights.
*901 Until such time as this matter is fully and finally decided by the appropriate appellate court, for the reasons set forth above, the court’s temporary order dated March 28, 1995 shall be made permanent.