OPINION OF THE COURT
J. Scott Odorisi, J.
This hybrid Civil Practice Law and Rules § 3001 declaratory judgment action and CPLR article 78 special proceeding involves a federal and state constitutional challenge to the defendant City of Rochester’s red light camera program.
Based upon a review of plaintiffs original pleadings; the motion to dismiss documentation from both parties; defendant’s answer and supporting documentation; and plaintiff’s reply papers, as well as upon oral argument heard at Special Term, this court denies the petition and verified complaint for the reasons set forth herein.
Facts
Legislative History
The genesis of the red light camera program is found in the Vehicle and Traffic Law.
Vehicle and Traffic Law § 1111-b (as added by L 2009, ch 22), which became effective May 28, 2009, granted the City of Rochester the authority to establish a “demonstration program imposing monetary liability on the owner of a vehicle for failure of an operator thereof to comply with traffic-control indications,” i.e., red lights. (See Vehicle and Traffic Law § 1111-b [a] *756 [ 1 ] [permitting a maximum of 50 cameras].)[2] The statute imposes liability for a red light infraction via a penalty upon the vehicle’s owner “if such vehicle was used or operated with the permission of the owner, express or implied.” (See Vehicle and Traffic Law § 1111-b [b].) Further, there is a “presumption that the operator of such vehicle was operating such vehicle with the consent of the owner.” (See Vehicle and Traffic Law § 1111-b [k] [ 2 ] .) If the owner was not the driver, he or she can sue the actual driver for indemnification should he or she be given a red light notice. (See Vehicle and Traffic Law § 1111-b [k] [1].)
A sworn or affirmed certificate by a city technician based upon the inspection of the red light camera footage is prima facie evidence of a violation, and the footage is available online for viewing by the recipient of a notice and is further retained for inspection in any proceeding to adjudicate the liability for an alleged infraction. (See Vehicle and Traffic Law § 1111-b [d].)
Subdivision (g) sets forth various requirements for the notice of liability, which is the form sent to the owner notifying him or her of an alleged infraction.
The law allows the liability adjudication to proceed before an administrative traffic bureau. (See Vehicle and Traffic Law § 1111-b [h].) At such an administrative proceeding, it is a defense that the camera was malfunctioning at the time of the alleged infraction. (See Vehicle and Traffic Law § 1111-b [n].)
The penalty for a finding of liability is limited to only a monetary fine of $50.[3] (See Vehicle and Traffic Law § 1111-b [e]; see also City Charter § 6-6 [F] [3].) A finding of liability “shall not be deemed a conviction . . . and shall not be made part of the operating record of the person upon whom such liability is imposed nor shall it be used for insurance purposes . . . .” (See Vehicle and Traffic Law § 1111-b [f] [emphasis added].) Thus, a finding of liability does not add any points to one’s driver’s license and does not expose a person to any jail time.
The red light camera program per Vehicle and Traffic Law § 1111-b was implemented by the City in section 6-6 (F) (1) of the City Charter, and those provisions together are collectively referred to as the “laws.” (See also Local Law Nos. 5-2009 and 13-2009 of the City of Rochester.) The City currently utilizes 31 *757 of the 50 authorized cameras and selected the subject intersections given a variety of safety related factors. Liability adjudications are referred to the City’s Parking Violations Bureau (Bureau). (See City Charter § 6-6 [F] [2].)
Background Information
On or about December 27, 2012, plaintiff Lawrence Krieger was mailed a notice of liability. The notice of liability alleged that, on December 22, 2012, plaintiff failed to properly stop at a red light for a right-hand turn at the intersection of Chestnut and Court Streets.
On January 23, 2013, plaintiff appeared before a Hearing Examiner at the Bureau to contest the notice of liability. At the beginning of the hearing, plaintiff was advised of his right to an attorney, but he forfeited the same.[4]
[5]Plaintiff pleaded not guilty and raised several procedural objections, including a due process objection given the strict liability on the owner. All procedural objections were rejected by the Hearing Examiner. As to the merits, and for his defense, plaintiff contended that the digital recording was inaccurate. The video of the incident, which the Hearing Examiner watched, shows the vehicle registered to plaintiff passing the stop line and then halting in the middle of the intersection despite there being a red light. At the conclusion of the hearing, plaintiff was adjudicated guilty and assessed the $50 fine.
Plaintiff appealed that adjudication, and the appeal was set for June 13, 2013, at the Bureau.
Lawsuit Facts
Plaintiff commenced the present lawsuit on May 31, 2013, seeking an order of prohibition, as well as a declaratory judgment decreeing that Vehicle and Traffic Law § 1111-b and City Charter § 6-6 (F) were unconstitutional.
Based upon the consent of the parties, plaintiffs appeal was stayed pending the outcome of this case. (See CPLR 7805.)
In its first filing before this court, defendant moved to dismiss the case, but that motion was denied by way of a letter decision dated July 31, 2013.®
After the above denial, defendant submitted a verified answer accompanied by several supporting affidavits, including one *758 from the current Mayor Thomas Richards, and a lengthy certified transcript of record — all explaining the valid legislative objectives behind the red light camera law, the purported positive effects of the same, and the procedural safeguards the law affords.
Plaintiff filed reply papers disputing the proffered rational basis for the law and also the effectiveness of the same.
Brief Summary of Contentions
Plaintiff assails the red light camera program on the ground that it violates his substantive and procedural due process rights. Plaintiff contends that the program is quasi-criminal in nature thereby requiring enhanced due process protections which are not being fulfilled under the current laws. Plaintiff asserts a substantive due process violation because the program improperly imposes vicarious liability through its statutorily imposed presumption which runs afoul of the proper placement of the burdens of proof. As to procedural due process grounds, plaintiff submits that the administrative process is essentially a sham and any defenses are meaningless.
In opposition, defendant highlights the rational relationship the red light camera program has to the legitimate government objective of ensuring public safety, as well as preserving precious law enforcement resources. Defendant also refutes the contention that the laws are quasi-criminal, and instead advocates that they are purely civil in nature given the limited $50 fine. Defendant further insists that the laws are compliant with administratively required due process protections.
Plaintiff replies that defendant’s reliance on a public safety objective is irrelevant as Vehicle and Traffic Law § 1111 (d) already prohibits disregarding a red light, and defendant failed to prove that the prior system of enforcement via the use of police officers was ineffective. Additionally, plaintiff disputes that red light infractions are of such a serious problem to allow the forgoing of traditional policing measures, and that the cameras are not in fact making the streets safer.
Extensive oral argument of the matter was heard on the court’s September 24, 2013, Special Term.
Legal Discussion
Plaintiff is not entitled to either declaratory judgment or article 78 relief because the red light camera program is constitutional as outlined in detail below.
*759 CPLR Grounds for Relief
The analysis of this case must start within the context of the forms of relief plaintiff seeks.
The first form of relief is a declaratory judgment pursuant to CPLR 3001. (See also CPLR 3017 [b].) CPLR 3001 is routinely invoked to litigate constitutional challenges to laws. (See Cayuga Indian Nation of N.Y. v Gould, 14 NY3d 614, 634 [2010]; Todd Mart v Town Bd. of Town of Webster, 49 AD2d 12, 16 [4th Dept 1975].) However, and as the Court of Appeals has decreed: “The use of a declaratory judgment, while discretionary with the court, is nevertheless dependent upon facts and circumstances rendering it useful and necessary. The discretion must be exercised judicially and with care.” (James v Alderton Dock Yards, 256 NY 298, 305 [1931] [emphasis added].)
The second form of relief falls under article 78 which permits review of administrative actions. Giving plaintiffs pleadings a liberal construction (see CPLR 3026), they appear to interpose two separate forms of article 78 relief. Plaintiff initially invokes the writ of prohibition provision of CPLR 7803 (2), but then also seems to invoke mandamus to review relief to vacate the guilt determination under CPLR 7803 (3) by alleging that defendant was proceeding in “violation of the law” (compare verified complaint ¶ 1 with ¶ 28). Both forms of article 78 relief will be briefly discussed.
As to a writ of prohibition, it is meant to restrain an administrative body that acts without, or in excess of its, jurisdiction. (See CPLR 7803 [2]; Matter of Van Wie v Kirk, 244 AD2d 13, 24 [4th Dept 1998].) The granting of prohibition relief is appropriate only when a petitioner shows a clear legal right thereto. (See Matter of Rush v Mordue, 68 NY2d 348, 352 [1986]; Matter of Niagara Frontier Transp. Auth. v Nevins, 295 AD2d 887 [4th Dept 2002].) Furthermore, such relief is rarely granted, is considered an extraordinary remedy, and is available at best as a matter of judicial discretion and not as a matter of right. (See La Rocca v Lane, 37 NY2d 575, 579 [1975]; Matter of Vargason v Brunetti, 241 AD2d 941 [4th Dept 1997].)
As to mandamus to review, it encompasses a claim that the contested procedure was “made in violation of lawful procedure.” (CPLR 7803 [3].) In this case, plaintiff claims that the red light camera procedure does not comply with the Due Process Clauses of the United States and New York State Constitutions, and such a claim is properly asserted under the “violation of lawful procedure” category. (See Solnick v Whalen, 49 NY2d 224, 231 [1980].)
*760 With the above framework in mind, and even though different legal grounds are advanced, the crux of plaintiffs case is the facial validity of the red light camera laws when assessed against the appropriate due process standard.
Standard of Review for a Facial Constitutional Challenge
Plaintiffs facial challenge to the red light camera laws falters as he failed to prove their unconstitutionality.
State statutes, as well as municipal enactments, are conferred an “exceedingly strong presumption of constitutionality.” (Lighthouse Shores v Town of Islip, 41 NY2d 7, 11 [1976] [emphasis added] [upholding constitutionality of a municipal ordinance]; see also Arrowsmith v City of Rochester, 309 AD2d 1201 [4th Dept 2003] [affirming denial of due process challenge to City Charter provision]; Matter of State of New York v Enrique T, 93 AD3d 158, 167 [1st Dept 2012] [“(facial invalidation is an extraordinary remedy and generally is disfavored”], lv dismissed 18 NY3d 976 [2012].) While this heavy presumption is rebuttable, unconstitutionality on due process grounds “must be demonstrated beyond a reasonable doubt and only as a last resort should courts strike down legislation on the ground of unconstitutionality.” (Lighthouse Shores, 41 NY2d at 11 [emphasis added]; see also Repicci v Sharpe, 96 AD2d 727 [4th Dept 1983]; Matter of Ventura, 108 Misc 2d 281, 285 [Sup Ct, Monroe County 1981].) To overcome the exceedingly strong presumption, a plaintiff must prove beyond a reasonable doubt that the contested law does not have a rational relationship to a legitimate government interest. (See Pharmaceutical Mfrs. Assn. v Whalen, 54 NY2d 486, 494 [1981]; Wegman’s Food Mkts. v State of New York, 76 AD2d 95, 98 [4th Dept 1980] [“(a)s long as the Legislature selects means which are reasonably calculated to serve a proper governmental purpose, the requirements of due process are satisfied”].) A law passes due process muster when it “is adopted for a legitimate governmental purpose and there is a ‘ “reasonable relation between the end sought to be achieved by the regulation and the means used to achieve that end.” ’ ” (Asian Ams. for Equality v Koch, 72 NY2d 121, 131-132 [1988].) “Legitimate governmental goals are those which in some way promote the public health, safety, morals, or general welfare.” (Marcus Assoc. v Town of Huntington, 45 NY2d 501, 506-507 [1978]; see also Matter of Brockport Sweden Prop. Owners Assn, v Village of Brockport, 81 AD3d 1416, 1418 [4th Dept 2011].)
Further, it is also presumed that the legislative body investigated and found a need for the law and, if any known or as *761 sumed facts justify the law, a court’s power of inquiry ends. (See Lighthouse Shores, 41 NY2d at 11-12; Matter of City of Rochester [449 Cedarwood Terrace], 90 AD3d 1480, 1483 [4th Dept 2011] [rejecting constitutional challenge to City’s local law], rearg denied 93 AD3d 1257 [2012], appeal dismissed and lv denied 19 NY3d 937 [2012].) In other words, “a facial challenge must fail where the statute has a ‘ “plainly legitimate sweep.” ’ ” (Washington State Grange v Washington State Republican Party, 552 US 442, 449 [2008].) Thus, and in order for a plaintiff to succeed on the rational relationship issue, he or she has the “burden of showing that ‘no reasonable basis at all’ existed for the challenged” law. (Lighthouse Shores, 41 NY2d at 12 [emphasis added], citing Matter of Van Berkel v Power, 16 NY2d 37, 40 [1965]; see also Vecchio v Griffin, 143 AD2d 1003 [2d Dept 1988] [condoning local law as it was reasonably related to its legitimate stated purpose of preventing unsafe driving conditions].)
Moreover, if the validity of a legislative act is even “fairly debatable, the legislative judgment must be allowed to control.” (Kravetz v Plenge, 84 AD2d 422, 428 [4th Dept 1982]; see also Town of N. Hempstead v Exxon Corp., 53 NY2d 747, 749 [1981].) This is true because “it is up to legislatures, not courts, to decide on the wisdom and utility of legislation.” (Minnesota v Clover Leaf Creamery Co., 449 US 456, 469 [1981]; see also McKinney’s Cons Laws of NY, Book 1, Statutes § 73 [“(t)he courts in construing statutes should avoid judicial legislation; they do not sit in review of the discretion of the Legislature or determine the expediency, wisdom, or propriety of its action on matters within its powers”]; Matter of Rosenthal v Hartnett, 36 NY2d 269, 273 [1975]; Matter of Foster v Smith, 52 AD2d 1088, 1090 [4th Dept 1976].) Accordingly, a law that has been carefully studied, prepared, and considered will not be disturbed. (See Asian Ams. for Equality, 72 NY2d at 131-132; Matter of Laird v Town of Montezuma, 191 AD2d 986 [4th Dept 1993].)
As the Fourth Department recently reiterated, “reviewing courts must ‘avoid interpreting a statute in a way that would render it unconstitutional if such a construction can be avoided and to uphold the legislation if any uncertainty about its validity exists.’ ” (Matter of Cappon v Carballada, 109 AD3d 1115, 1117 [4th Dept 2013] [citation omitted] [ruling that a City of Rochester Code provision was constitutional]; see also Statutes § 150 [“The courts should not strike down a statute as unconstitutional unless such statute clearly violates the Constitu *762 tion”]; Overstock.com, Inc. v New York State Dept. of Taxation & Fin., 20 NY3d 586, 593 [2013].) Therefore, a court is required, if possible, to construe the statute to preserve its constitutionality. (See United States v Harriss, 347 US 612, 618 [1954].)
Applying the above stringent standard, and pursuant to a court’s circumscribed review, plaintiff failed to meet his heavy burden of rebutting the exceedingly strong presumption of constitutionality of the red light camera laws. (See Lighthouse Shores, 41 NY2d at 11; Repicci, 96 AD2d at 727; Matter of Ventura, 108 Misc 2d at 285.)
1. Clear Proof of a Legitimate Government Interest
The entire record presented to the court provides more than ample justification for the red light camera laws. (See Matter of Travelers Prop. Cas. Co. of Am. v Nassau County Traffic & Parking Violations Agency, 34 Misc 3d 844, 846 [Sup Ct, Nassau County 2011].)
The record is replete with proof that the red light camera laws were enacted in furtherance of public safety. As to Vehicle and Traffic Law § 1111-b, and its justification, the Sponsor’s Memorandum states that
“[disregarding red lights and other traffic control devices is the leading cause of urban crashes, representing almost half of the total number of crashes according to the Insurance Institute for Highway Safety (IIHS). The IIHS estimates that the economic impact is $7 billion each year in medical costs, time off work, insurance rate increases, and property damage. An Insurance Research Council study of a national sample of automobile crash injury claims found that about 75 percent of the crashes occurred in urban areas. Given the toll that motor vehicle crashes exact upon individuals, families, and society, this bill provides the City of Rochester with authorization to establish a red light camera demonstration program aimed at reducing intersection crashes caused by red light violations within the City.” (Sponsor’s Mem, Bill Jacket, L 2009, ch 22 at 6 [emphasis added]; see also defendant’s exhibit 4 at 363.)
The Sponsor’s Memorandum, which this court can consider to glean the legislative intent (see Statutes § 92; Matter of North v Board of Examiners of Sex Offenders of State of N.Y., 8 NY3d 745, 753-754 [2007]; Weiner v City of New York, 84 AD3d 140, 143 [2d Dept 2011], affd 19 NY3d 852 [2012]), sets forth a valid *763 public safety improvement goal of reducing traffic accidents. In addition, the Sponsor’s Memorandum also proves that the legislature made adequate investigative measures to support its action by its review of the IIHS information. (See Asian Ams. for Equality, 72 NY2d at 131-132; Laird, 191 AD2d at 986.) Due to this careful consideration, this court is restricted from second-guessing the propriety of enacting Vehicle and Traffic Law § 1111-b. (See Minnesota, 449 US at 469; Statutes § 73; Rosenthal, 36 NY2d at 273; Foster, 52 AD2d at 1090.)
As with the state version, the City Charter provision was also buttressed by sufficient research to support defendant’s conclusion that the red light camera program would foster public safety. (See Asian Ams. for Equality, 72 NY2d at 131-132; Laird, 191 AD2d at 986.) More specifically, defendant submitted the affidavits of the current Mayor, the Primary Assistant to the Corporation Counsel, the City Engineer, and various Rochester City Police Department officials all attesting to the public safety objective of the program (defendant’s exhibits at 5-30). Their affidavit claims are further bolstered by various safety studies considered by defendant, as well as former Mayor Robert J. Duffy’s transmittal letter to the City Council detailing the aim of increasing public safety by reducing traffic accidents due to red light infractions (defendant’s exhibit 1 at 32-33). Again, and because of this thorough preparation, this court is prohibited from usurping defendant’s broad discretion in the legislative realm. (See Minnesota, 449 US at 469; Statutes § 73; Rosenthal, 36 NY2d at 273; Foster, 52 AD2d at 1090.)
Taken together, both the state and city laws must stand as well-reasoned acts intended to advance the legitimate governmental interest in safeguarding public safety and welfare, and plaintiff fails to prove beyond a reasonable doubt otherwise. (See Pharmaceutical Mfrs. Assn., 54 NY2d at 494; Lighthouse Shores, 41 NY2d at 11; Repicci, 96 AD2d at 727; Wegman’s Food Mkts., 76 AD2d at 98.) Stated differently, it cannot be said that either the state or city law was wholly without any reasonable basis at all. (See Lighthouse Shores, 41 NY2d at 12; Vecchio, 143 AD2d at 1003.)
In fact, increasing public safety through improved surveillance and enforcement of red light violations was approved as a rational basis for sustaining the City of Springfield, Missouri’s red light camera program. (See Mills v City of Springfield, Mo., 2010 WL 3526208, 2010 US Dist LEXIS 92031 [WD Mo., Sept. 3, 2010, No. 2:10-CV-04036-NKL] [dismissing federal claims *764 against red light camera program].) This court finds Mills’ holding persuasive and concludes that a similar outcome is warranted in the case at bar.
This court finds unpersuasive plaintiffs contention that the public safety purpose must be totally disregarded because the red light cameras are not making driving safer — a fact which defendant hotly disputes.[6] Even taking as true plaintiffs argument that the cameras are proving to be ineffective, such an outcome is irrelevant and cannot be used to retroactively invalidate the legislative intent. The soundness of legislative intent must be assessed against the facts known at the time the legislative body acted, not as they presently stand. New York law expressly directs courts to construe a statute and legislative intent not “when the courts are called on to interpret it, but as of the time it took effect.” (Statutes § 93; see also Matter of Spencer v Board of Educ. of City of Schenectady, 39 AD2d 399, 402 [3d Dept 1972] [“it is the intention of the Legislature at the time the various statutes took effect that controls”], affd 31 NY2d 810 [1972].) As a result of this legal principle, plaintiffs protests about the usefulness of the red light camera program to negate the previous intent are unavailing. Rather, it is more appropriately a lobbying consideration against extending the laws past their December 1, 2014, expiration dates. In other words, the current statistics do not undo the preexisting good faith with which both legislative bodies acted.
Besides the primary target of better safety on city streets, this court also finds compelling the further benefit of preserving precious law enforcement resources through automation of traffic infraction oversight, as described by the Rochester Police Department officials and as reflected in both laws’ legislative materials (defendant’s exhibits at 21-24; exhibit 1 at 32; exhibit 4 at 363). This exact proffered legitimate governmental interest was sustained in Idris v City of Chicago, Ill. (552 F3d 564 [7th Cir 2009]). In Idris, the Seventh Circuit upheld that red light camera program upon the finding that “[a] system of photographic evidence reduces the costs of law enforcement and increases the proportion of all traffic offenses that are detected.” (Id. at 566 [emphasis added].) Consequently, and per Idris, there exists a second rational justification, namely resource preservation, for allowing the red light camera laws to continue.
*765 Idris is further instructive on another one of plaintiffs objections to the program. Contrary to plaintiffs position, the red light camera program’s side effect of generating money for defendant is not dispositive and “does not condemn it.” (Id.) The Seventh Circuit decreed that “[a] system that simultaneously raises money and improves compliance with traffic laws . . . cannot be called unconstitutionally whimsical.” (Id.) This logic is very convincing and will be applied to the present case to reject plaintiff’s revenue-based opposition to the red light camera program. (See also DeVita v District of Columbia, 74 A3d 714 [DC 2013] [citing Idris to rule that the Capitol’s automated speed enforcement mechanism was valid].)
In sum, plaintiff fell well short of his heavy burden of proving beyond a reasonable doubt that the red light camera laws were bereft of a rational relationship to a legitimate government interest. (See Lighthouse Shores, 41 NY2d at 11; Repicci, 96 AD2d at 727; Matter of Ventura, 108 Misc 2d at 285.) In the absence of such proof, plaintiff is not entitled either to a declaratory judgment striking down the laws as facially infirm, or to article 78 relief.
2. Purely Civil Nature of the Red Light Camera Program
Having resolved the facial constitutional challenge in defendant’s favor, the court now must determine whether the red light infraction adjudication process is civil or quasi-criminal. This categorization will determine what appropriate due process standard applies. Here again, the legislative intent is given much deference and the plaintiff has the burden of providing clear proof that the $50 fíne is of such a punitive nature that it constitutes a criminal penalty. This court agrees with defendant that the process is entirely civil in nature. (See e.g. Bevis v City of New Orleans, 686 F3d 277, 280 [5th Cir 2012] [agreeing with the District Court’s conclusion that the digital camera traffic enforcement program was civil in nature]; Shavitz v City of High Point, 270 F Supp 2d 702, 713 [MD NC 2003] [same], order vacated 100 Fed Appx 146 [4th Cir 2004] [vacating just portion of order concerning defendants’ cross claims against each other and not disturbing the red light camera rulings]; People v Nager, 34 Misc 3d 135[A], 2011 NY Slip Op 52390[U], *2 [App Term, 2d Dept, 9th & 10th Jud Dists 2011] [holding that the proceedings pursuant to Vehicle and Traffic Law § 1111-b are “wholly civil in nature”].)
Whether a particular procedure and/or punishment is criminal or civil is primarily a matter of statutory construction. (See *766 Hudson v United States, 522 US 93, 99 [1997]; Ciafone v Kenyatta, 27 AD3d 143, 147 [2d Dept 2005] [monetary penalties in Son of Sam Law were civil punishment]; see also Kilper v City of Arnold, Mo., 2009 WL 2208404, *14, 2009 US Dist LEXIS 63471, *42-44 [ED Mo, July 23, 2009, No. 4:08cv0267 TCM] [red light camera program was civil].) A reviewing court thus must first consider the statute’s text and its structure to determine the legislative objective. {See Smith v Doe, 538 US 84, 92 [2003].) “Only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty.” (People v Sprint Nextel Corp., 41 Misc 3d 511, 521 [Sup Ct, NY County 2013], citing Smith, 538 US at 92.)
Applying the above law to the instant case, the statutory scheme demonstrates an unequivocal intent to create a civil enforcement mechanism, not a criminal one. (See e.g. People v Polsky, 40 Misc 3d 132[A], 2013 NY Slip Op 51134[U] [App Term, 2d Dept, 9th & 10th Jud Dists 2013] [noting that red light camera action was commenced to impose a “civil liability”]; People v Buttaro, 40 Misc 3d 132[A], 2013 NY Slip Op 51138[U] [App Term, 2d Dept, 9th & 10th Jud Dists 2013] [same]; People v Lewis-El, 38 Misc 3d 137[A], 2013 NY Slip Op 50173[U] [App Term, 2d Dept, 9th & 10th Jud Dists 2013] [same]; People v Graifman, 38 Misc 3d 137[A], 2013 NY Slip Op 50174[U] [App Term, 2d Dept, 9th & 10th Jud Dists 2013] [same]; People v Kay, 38 Misc 3d 131[A], 2012 NY Slip Op 52414[U] [App Term, 2d Dept, 9th & 10th Jud Dists 2012] [same]; People v Gilligan, 37 Misc 3d 142[A], 2012 NY Slip Op 52286[U] [App Term, 2d Dept, 9th & 10th Jud Dists 2012] [same]; see also Muldoon, Handling a Criminal Case in New York § 1:30.)
For starters, the Vehicle and Traffic Law expressly states that a finding of liability “shall not be deemed a conviction.” (See Vehicle and Traffic Law § 1111-b [f] [emphasis added]; see also CPL 1.20 [13]; County of Nassau v Levine, 29 Misc 3d 474, 482 [Nassau Dist Ct 2010]; Maisel, Slave to the Traffic Light: A Road Map to Red Light Camera Legal Issues, 10 Rutgers JL & Pub Pol’y 401, 409 [2013].) Vehicle and Traffic Law offenses are generally classified as violations, misdemeanors, or felonies and are commenced by the filing of an accusatory instrument in a criminal court. {See CPL 1.20 [1], [16]-[18].) A finding of guilty in a criminal court equates to a conviction for that offense and exposes the offender to possible jail time. (See Vehicle and Traf *767 fie Law § 1800.) Here, there is no formal criminal prosecution as Vehicle and Traffic Law § 1111-b (f) does not allow for a conviction exposing the offender to potential jail time. (See also Vehicle and Traffic Law § 155.) Therefore, there are no additional consequences after being adjudicated “guilty” under the City’s red light camera program. Also, the alleged infraction is heard by an administrative body and not a criminal court. (See Vehicle and Traffic Law § 1111-b [h]; City Charter § 6-6 [F] [2]; Rosenthal, 36 NY2d at 271 [traffic infractions can be adjudicated administratively].) The use of an administrative tribunal, and also the lack of the imposition of possible jail time, makes the City’s red light camera program distinguishable from People v Hildebrandt (308 NY 397 [1955]), wherein the applicable speeding charge was adjudicated in criminal court, constituted a conviction under the Vehicle and Traffic Law, and could have subjected that defendant to imprisonment. Accordingly, Hildebrandt is distinguishable and not controlling authority. In addition, and unlike Incorporated Vil. of Laurel Hollow v Laverne, Inc. (24 AD2d 615 [2d Dept 1965]), which involved a contempt finding, the laws presently under consideration do not allow for a criminal prosecution; therefore, this court finds that the quasi-criminal analysis in that case to be inapplicable.
Furthermore, the limited $50 fine is not so severe as to transform the intended civil penalty into a quasi-criminal one. (See Hudson, 522 US at 99 [if a civil penalty is so punitive, it may qualify as a criminal penalty].) As the Court of Appeals has recognized, “[c]ivil fines and penalties are routinely imposed by administrative action.” (Rosenthal, 36 NY2d at 274.) The minimal fine, and the absence of surcharges, reduces the punitive impact of a red light infraction. (See Vehicle and Traffic Law § 1809.) In comparison to the red light camera program, a red light citation issued by a police officer per Vehicle and Traffic Law § 1111 (d) (1) currently imposes a mandatory fine range of $75 to $225, plus a mandatory state surcharge of $88, for a total payment range of $163 to $313 and/or 15 days in jail. (See Vehicle and Traffic Law §§ 1800 [b] [1]; 1809 [1] [a], [c].) Consequently, the $50 fine for a red light camera citation represents a small fraction of the penalty for a traditional red light infraction for the same offense.
In light of the above factors, this court refuses to characterize the red light camera program as quasi-criminal. Consequently, *768 plaintiff does not have a right to heightened due process.[7] (See e.g. Titus v City of Albuquerque, 149 NM 556, 567, 252 P3d 780, 791 [2011] [automatic speeding enforcement program was civil not criminal], cert granted 150 NM 667, 265 P3d 718 [2011], cert quashed 300 P3d 1182 [NM 2013]; Balaban v City of Cleveland, 2010 WL 481283, *6, 2010 US Dist LEXIS 10227, *15-16 [ND Ohio, Feb. 5, 2010, No. l:07-cv-1366] [red light camera program was civil in nature].)
3. Sufficient Due Process for Civil Enforcement
Matters that are civil in nature, such as defendant’s red light camera enforcement program, require a lower level of due process protections as set forth in Mathews v Eldridge (424 US 319 [1976]). This court rules that the red light camera laws comply with the same. (See e.g. Bevis, 686 F3d at 280-281 [red light camera program complied with the Mathews test]; see also Rosenthal, 36 NY2d at 274 [finding no due process violation in traffic ticket adjudicated through an administrative tribunal]; St. Joseph Hosp. of Cheektowaga v Novello, 43 AD3d 139, 143 [4th Dept 2007] [finding that the subject legislation satisfied the minimum procedural due process requirements].)
The fundamental requirement of due process for civil enforcement is the opportunity to be heard “at a meaningful time and in a meaningful manner.” (Mathews, 424 US at 333; see also Matter of Kaur v New York State Urban Dev. Corp., 15 NY3d 235, 260 [2010] [finding sufficient due process]; Matter of State of New York v Farnsworth, 75 AD3d 14, 20 [4th Dept 2010] [same].) The due process analysis is flexible and calls for such procedural protections as the particular situation demands. (See Morrissey v Brewer, 408 US 471, 481 [1972]; Curiale v Ardra Ins. Co., 88 NY2d 268, 274 [1996]; Niagara Falls Mem. Med. Ctr. v Axelrod, 88 AD2d 777 [4th Dept 1982].)
The Mathews Court outlined three distinct due process factors in the administrative context:
“First, the private interest that will be affected by the official action; second, the risk of an erroneous *769 deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government’s interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.” (Mathews, 424 US at 335 [emphasis added]; see also Mental Hygiene Legal Servs. v Ford, 92 NY2d 500, 507 [1998] [due process concerns were complied with]; Swartz v City of Corning, 46 AD3d 1364, 1366 [4th Dept 2007]; Matter of Ventura, 108 Misc 2d at 286.)
In applying the Mathews test in the administrative traffic ticket scenario, it has been noted that “[t]he due process clause is not a straitjacket, preventing state governments from experimenting with more efficient methods of delivering governmental services . . . The traditional system, mindlessly assimilating a parking ticket to an indictment for murder, was archaic and ineffective.” (Van Harken v City of Chicago, 103 F3d 1346, 1351 [7th Cir 1997] [emphasis added].)
The red light camera laws comport with the Mathews test. (See e.g. Idris, 552 F3d at 567-568 [red light camera program did not infringe upon due process rights].)
As to the first factor, the private interest, plaintiff is certainly not claiming that he has a right to disobey traffic control devices whether a citation is issued via electronic means or through the traditional methods of a police officer. Advancements in technology over the past decade have created opportunities for better public safety techniques, and are readily becoming the new norm in society.[8] Additionally, the legislature went to great lengths to design the red light camera program to be a minimal invasion into privacy by prohibiting photographs of the “driver, the passengers, or the contents of the vehicle.” (Vehicle and Traffic Law § 1111-b [a] [2].) Actions undertaken on a public street are not cloaked in constitutional privacy rights. (See e.g. Young v City of Kansas City, Mo., 2011 WL *770 5983351, 2011 US Dist LEXIS 136465 [WD Mo, Nov. 29, 2011, No. 4:11-CV-00095-W-DGK] [rejecting the claim that traffic enforcement cameras violated one’s right to privacy].) Further, the modest $50 penalty is not so substantial as to infringe upon a person’s private property rights.[9]
In regard to the second factor, the risk of erroneously depriving the plaintiff of his private interest is nominal as sufficient procedural safeguards are in place. The hallmarks of due process are provided by the current red light camera program, namely notice and a chance to be heard. (See Mathews, 424 US at 333; Kaur, 15 NY3d at 260; State, 75 AD3d at 20; Matter of Tipon v Appeals Bd. of Admin. Adjudication Bur., Dept. of Motor Vehs., 82 Misc 2d 657, 659 [Sup Ct, Monroe County 1975], affd 52 AD2d 1065 [4th Dept 1976].) More specifically, the notice of liability provides sufficient detail of the allegations (see Vehicle and Traffic Law § 1111-b [g]), as amplified by an opportunity to view the video of the alleged infraction via the Internet, and the matter is set for a hearing at which time the owner is given a chance to contest the alleged infraction. (See Vehicle and Traffic Law § 240 [2].)
The fact that a city technician inspects the red light camera footage and issues a sworn or affirmed certificate, and another city employee conducts the hearings, does not condemn the red light camera program. (See Bevis, 686 F3d at 280-281 [noting that the adjudicating official being an employee of the municipal executive did not offend due process].)
At the hearing, the owner can have the assistance of an attorney if desired, can subpoena witnesses and records, and is not restrained by the traditional rules of evidence. (See Vehicle and Traffic Law § 240 [2] [c], [d].) The hearing also provides the owner with the ability to pursue the defense that the red light camera was malfunctioning, as plaintiff did in this case. (See Vehicle and Traffic Law § 1111-b [n].)[10] The owner’s guilt must be shown by “substantial evidence.” (See Vehicle and Traffic Law § 240 [2] [b]; Matter of Silverstein v Appeals Bd. of Parking Violations Bur., 100 AD2d 778, 779 [1st Dept 1984].) An owner *771 is also granted the ability to appeal any guilt adjudication to an Examiner Panel at the Bureau, another protection of which plaintiff took advantage. Taking into consideration all of the above procedural protections, plaintiffs procedural due process challenge fails as a matter of law. (See e.g. Ware v Lafayette City-Parish Consol. Govt., 2009 WL 5876275, *8, 2009 US Dist LEXIS 97836, *22-24 [WD La, Jan. 6, 2009, No. 08-0218] [red light camera program passed constitutional due process muster].)
As to the third factor, the government’s interest, and as already noted, defendant has a strong interest in securing public safety, as well as in maintaining efficient means of addressing traffic infractions. (See e.g. State v King, 199 Or App 278, 282, 111 P3d 1146, 1148 [2005] [upholding automated speed enforcement system based upon the legislature’s interest in providing for a cost-efficient method of addressing public safety].) The additional fiscal and administrative burdens of requiring a live witness to attest to the functioning of the red light cameras in each and every case would undermine one of the original goals of saving sparse governmental resources. (See e.g. Rao v Gunn, 73 NY2d 759, 761 [1988] [additional procedural protection sought by the petitioner would have imposed substantial administrative and fiscal burdens on the respondent with no apparent countervailing benefit to the petitioner, and as such, it was not required on due process grounds].) This court finds that the current procedures in place, when weighed against fiscal and administrative burdens of additional substitute procedures, results in a finding that sufficient due process protections are in place.
Other courts have also found sufficient due process protections after applying the Mathews factors in the various red light camera programs across the country. (See Bevis, 686 F3d at 280-281; Balaban, 2010 WL 481283, *7-8, 2010 US Dist LEXIS 10227, *18-21 [granting municipality summary judgment on due process claim]; Ware, 2009 WL 5876275, *8, 2009 US Dist LEXIS 97836, *22-24; Shavitz, 270 F Supp 2d at 721 [due process is adequately afforded to red light camera citation recipients]; DeVita, 74 A3d at 722-724.)
In all, the red light camera program in the City satisfies the basic due process protections required by Mathews, and will not be disbanded on that basis.
4. Legally Permissible Vicarious Liability
As plaintiff conceded at Special Term, his weakest argument was his substantive due process challenge concerning the *772 imposition of vicarious liability on the owner of the vehicle per the presumption that the operator was operating the vehicle with the express or implied consent of the owner. This challenge is one which this court refuses to adopt. (See e.g. Idris, 552 F3d at 565-566 [rejecting substantive due process objection lodged against red light camera program].)
Substantive due process functions to protect those “fundamental rights and liberties which are, objectively, deeply rooted in this Nation’s history and tradition.” (Washington v Glucksberg, 521 US 702, 720-721 [1997] [internal quotation marks omitted]; see also Samuels v New York State Dept. of Health, 29 AD3d 9, 14 [3d Dept 2006], affd 7 NY3d 338 [2006].) Therefore, a “denial of the right to substantive due process occurs only when ‘the governmental action was wholly without legal justification.’ ” (St. Joseph Hosp. of Cheektowaga v Novello, 43 AD3d 139, 144 [4th Dept 2007] [citation omitted].)
As already set forth, there is more than ample justification for the red light camera laws. (See Travelers Prop. Cas. Co. of Am., 34 Misc 3d at 846.)
Also, and as noted by the Idris court, no one has a fundamental right to run a red light or avoid being seen by a camera on a public street, and the fine at stake in that case ($90) was too modest to qualify as a protected and fundamental property right. (See 552 F3d at 566; see also Fischetti v Village of Schaumburg, 967 NE2d 950, 959-960 [111 App Ct 2012].) In fact, the Idris court characterized the substantive due process attack on the vicarious liability of the red light program as a “dud.” (See 552 F3d at 566.) Such a characterization was proper considering long-standing United States Supreme Court rulings. As to vicarious liability in the due process scenario, the Supreme Court has articulated:
“The extension of the doctrine of liability without fault to new situations to attain a permissible legislative object is not so novel in the law or so shocking ‘to reason or to conscience’ as to afford in itself any ground for the contention that it denies due process of law.” (Louis Pizitz Dry Goods Co. v Yeldell, 274 US 112, 115 [1927]; see also Van Oster v Kansas, 272 US 465, 467 [1926] [“It is not unknown or indeed uncommon for the law to visit upon the owner of property the unpleasant consequences of the unauthorized action of one to whom he has entrusted it”].)
*773 Therefore, the owner of a vehicle should exercise care before entrusting his/her vehicle to someone who could use that vehicle in a negligent or reckless manner.
This court finds that plaintiffs objection to the vicarious liability and presumption argument falters because such a legal doctrine is already permissible law. In particular, the Vehicle and Traffic Law contains a vicarious liability provision imposed upon owners in section 388 (I).[11] Relying upon the above Supreme Court precedent, and similar permissible presumptions already contained in the Vehicle and Traffic Law, the red light camera program’s placement of ultimate responsibility on the automobile’s owner is entirely permissible. (See e.g. Agomo v Fenty, 916 A2d 181, 193 [DC 2007] [automated traffic enforcement system’s vicarious liability provision did not violate due process].)
In addition to the Vehicle and Traffic Law, and even though the red light camera program is civil in nature, various presumptions are even permissible in the criminal context which requires much more stringent due process protections. (See Penal Law § 265.15.)[12] By correlation, if certain presumptions are viable in criminal prosecutions, then they certainly pass constitutional review in the less stringent civil arena where the presumption of innocence does not apply. (See e.g. Agomo, 916 A2d at 193 [criminal law rubric of improper shifting of the burden of proof argument carried no weight in civil traffic enforcement program]; see also Matter of Block v Ambach, 73 NY2d 323, 333 [1989] [“there is generally no need to import the strict requirements of the criminal law and criminal trials into administrative proceedings”].)
Finally, this court finds that the red light camera program is less invasive than the traditional policing methods which involve a much more substantial interference with one’s privacy and *774 liberty interests. (See Young, 2011 WL 5983351, 2011 US Dist LEXIS 136465.) In a traditional traffic stop by a police officer, the officer will generally request from the driver proof of registration and insurance, and often inquires of the driver whether the driver knows why the officer stopped him or her and whether the driver is in a hurry, as well as other possible inquiries. Said stops also provide the officer with an opportunity to view into the vehicle for items and contents in plain sight. The City’s red light camera program avoids all of this interference; thus, this court finds the program to be much less intrusive.
When viewed in its totality, the red light camera law’s vicarious liability provision is a sound exercise of the government’s discretion in managing public safety, which does not infringe upon a fundamental right or offend substantive due process. (See e.g. State v Dahl, 336 Or 481, 483, 87 P3d 650, 651 [2004] [State could rely upon statutory presumption in holding owner liable for automated speeding ticket].)
Conclusion
In conclusion of this entire decision, and because plaintiffs constitutional challenges to the red light camera laws fail under judicial review, he is not entitled to a declaratory judgment discontinuing the program. Nor is plaintiff entitled to any form of article 78 relief as the law does not support either a finding that plaintiff has a clear right to prohibition relief, or that the red light camera system and infraction adjudication methods counter lawful procedure.
Based upon all of the foregoing, it is the decision of this court that: the petition and verified complaint are denied; a declaratory judgment be issued in defendant’s favor ruling that Vehicle and Traffic Law § 1111-b and City Charter § 6-6 (F) are constitutional; defendant’s determination that plaintiff was guilty is confirmed; and the stay is hereby lifted.

. The red light camera program is set to expire on December 1, 2014. (See Vehicle and Traffic Law § 1111-b; City Charter § 6-6 [F] [3] n 81.)

. Per Vehicle and Traffic Law § 1809, a Vehicle and Traffic Law § 1111-b infraction is not subject to any surcharges.

. Plaintiff is also an attorney and represented himself at the hearing.

. At oral argument of the motion to dismiss, plaintiff narrowed his constitutional objection to only a facial one and not as an applied challenge as initially alleged (see verified complaint, wherefore cl).

. This court recognizes plaintiffs argument that the lower accident rate at the subject intersections was not due to the cameras, but instead due to a statistical anomaly and/or a natural cyclical decrease in traffic incidents; therefore, the legislation has not been proved to fulfill its intended purpose.

. Without the heightened due process, plaintiff is also not entitled to any Sixth Amendment Confrontation Clause protections requiring the live testimony of a camera technician subject to cross-examination per Crawford v Washington (541 US 36 [2004]). (See Village of Muttontown v Port Washington Holding Corp., 74 AD3d 793, 794 [2d Dept 2010]; Nager, 34 Misc 3d 135[A], 2011 NY Slip Op 52390[U]; Levine v Traffic & Parking Violation Agency for Nassau County, 29 Misc 3d 1205[A], 2010 NY Slip Op 51702[U] [Sup Ct, Nassau County 2010].)

. This court takes pause to clarify that its decision today is limited to the red light camera program as it currently stands, and is not intended to signal approval of any and all technological tools aimed at increasing public safety. This court is also mindful of the fact that additional tools to monitor and enforce other Vehicle and Traffic Law infractions throughout the state (such as speed enforcement through stationary radar devices) are probably not far off in the horizon. This court acknowledges the potential for abuse that sweeping changes in technology may bring, and each such alleged overstepping will have to be assessed on its own specific facts and circumstances.

. This court recognizes the potential for negative workplace repercussions for a driver who uses his or her employer’s vehicle in the private workplace and receives a red light infraction notice. However, and as noted at Special Term, this eventuality cannot form the basis to negate the red light camera program as a private employer’s discipline is not chargeable as governmental action.

. Another avenue of relief afforded to the owner is the indemnification action against the actual driver. (See Vehicle and Traffic Law § 1111-b [k] [1].)

. Vehicle and Traffic Law § 388 (1) states that
“[e]very owner of a vehicle used or operated in this state shall be liable and responsible for death or injuries to person or property resulting from negligence in the use or operation of such vehicle ... by any person using or operating the same with the permission, express or implied, of such owner." (Emphasis added.)

. Penal Law § 265.15 imposes various presumptions relieving the prosecution of the burden of having to prove facts concerning different forms of possession (i.e., weapons). These criminal law presumptions are instructive because the prosecution has the burden of proof beyond a reasonable doubt in a criminal trial (see People v Robinson, 36 NY2d 224, 227-228 [1975]), and all defendants are presumed to be innocent in the eyes of the law. (See People v Fitzgerald, 156 NY 253, 265 [1898].)